HARLEYSVILLE MUTUAL INSURANCE COMPANY v. BUZZ OFF INSECT SHIELD,
L.L.C., A NORTH CAROLINA LIMITED LIABILITY COMPANY; INTERNATIONAL GARMENT
TECHNOLOGIES, L.L.C., A NORTH CAROLINA LIMITED LIABILITY COMPANY; ERIE
INSURANCE EXCHANGE; AND ERIE INSURANCE COMPANY

No. 272A08

(Filed 15 April 2010)

**Insurance— exclusion—false advertising claims—statements
about own products**

A commercial general liability insurance company (CGL)
was not required to defend a policyholder (IGT) against an
alleged false advertising claim brought by an insect repellant
competitor (SCJ). The policy's Failure to Conform clause
excludes injuries caused by false statements the insured makes
about its own products, which were the only false statements
alleged here.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a
divided panel of the Court of Appeals, 190 N.C. App. 28, 664 S.E.2d
317 (2008), affirming an order on cross-motions for partial summary
judgment entered on 24 May 2007 and an order denying motions to
alter, amend, or vacate judgment entered on 25 June 2007, both by
Judge John O. Craig, III in Superior Court, Guilford County. On 9
October 2008, the Supreme Court allowed plaintiff's petition for discretionary review of additional issues. Heard in the Supreme Court
on 4 May 2009.

1

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

*Pinto Coates Kyre & Brown, P.L.L.C., by David L. Brown, Martha P. Brown, and John I. Malone, Jr.; and Blank Rome LLP, by Jeremy A. Rist, pro hac vice; for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard L.L.P., by Mack Sperling; and Latham & Watkins LLP, by J. Scott Ballenger, pro hac vice; for defendant-appellee International Garment Technologies, L.L.C.*

*Nelson, Levine de Luca & Horst, LLC, by Michael A. Hamilton, pro hac vice; and Burton & Sue, L.L.P., by Gary K. Sue, for defendant-appellants Erie Insurance Exchange and Erie Insurance Company.*

*Nelson Mullins Riley & Scarborough LLP, by Joseph W. Eason and Stephen D. Martin, for Property Casualty Insurers Association of America, amicus curiae.*

*Maynard & Harris Attorneys at Law, PLLC, by C. Douglas Maynard, Jr., for United Policyholders, amicus curiae.*

NEWBY, Justice.

This case arose out of a dispute between competing producers of insect repellents. Defendants Buzz Off Insect Shield, L.L.C. ("BOIS") and International Garment Technologies, L.L.C. ("IGT") allegedly falsely advertised the attributes of their insect-repellent clothing. S.C. Johnson & Son, Inc. ("SCJ"), defendants' competitor, believed that it was being injured by these advertisements. As a result, SCJ sued BOIS and IGT in federal court to compensate for this injury. The question currently before this Court is whether IGT's commercial general liability ("CGL") insurance carriers are required to defend it against SCJ's claims. To answer this question, we look to the language of the CGL policies to determine whether injury from a false advertisement is covered. The CGL policies appear to provide coverage for injury resulting from some false statements made in advertisements, but do not cover injury caused by false statements an insured makes about its own products. It is the CGL policies' "Quality Or Performance Of Goods—Failure to Conform to Statements" exclusion ("Failure to Conform exclusion") that eliminates any coverage for these types of false statements. Thus, the ultimate question we address is what kind of advertisement did SCJ allege as the cause of its injury. Did SCJ allege injury resulting solely from BOIS's and IGT's allegedly false statements about their own products, or did SCJ also include allega-

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

tions of injury from false statements about SCJ's products? Because SCJ only alleged it was injured by false statements defendants BOIS and IGT made about their own products, the CGL policies' Failure to Conform exclusion dictates that there is no insurance coverage for SCJ's injury, and therefore, the CGL insurance companies are not required to defend their insured IGT against SCJ's claims. As the Court of Appeals concluded the CGL insurance companies were required to defend against SCJ's claims, we reverse that decision and remand this matter to that court.

## I. BACKGROUND

Defendants BOIS and IGT[1] process clothing manufactured and marketed by others to add an insect repellent to the apparel. During the 1990s, R.A. Lane Corporation, defendant BOIS's predecessor in interest, began developing a process ("the BOIS process") to treat fabric with the insect repellent permethrin such that the repellent binds to the fabric. Defendant BOIS eventually created the BOIS process and later received approval from the United States Environmental Protection Agency ("EPA") to apply the BOIS process to consumer apparel. Defendant IGT then marketed the BOIS process by entering into agreements with manufacturers of consumer apparel, such as L.L. Bean, Ex Officio, and Orvis, under which IGT would apply the BOIS process to apparel manufactured by these other entities. Defendants would then affix the BOIS mark, BUZZ OFF[TM], to the newly treated garments ("BOIS apparel") and return them to the manufacturer for sale.

It is undisputed that defendants promoted the treated apparel through various advertisements. Specifically, according to SCJ, defendants touted BOIS apparel by stating that it: (1) "reduce[s] or eliminate[s] the need to apply an insect-repellent product on the skin," (2) "protects uncovered skin from mosquito bites," (3) prevents wearers from "receiv[ing] any mosquito bites," (4) "is equivalent to or superior in performance to topical insect repellents, such as those containing DEET," (5) provides protection against mosquito bites without "the 'hassle' of applying 'messy' insect-repellent products directly to the skin," (6) "is highly effective through 25 washings," and (7) "contains a version of a natural insecticide that is derived from chrysanthemum flowers." These claims, it seems, ap-

---

1. BOIS and IGT are collectively referred to herein as "defendants." Any use of the term "defendants" refers only to BOIS and IGT. The term does not include Erie Insurance Exchange or Erie Insurance Company, which are also defendants in this action. We refer to these entities collectively as "Erie."

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

peared on and were disseminated by defendant BOIS's website and the BOIS apparel, the websites and print advertisements of other entities that manufactured clothing to be treated with the BOIS process ("BOIS Partners"), and the advertising materials of various retailers selling the BOIS apparel ("BOIS Partner Affiliates").

SCJ is a competitor of defendants. SCJ states that it "manufactures, under the trademark OFF and related marks, a variety of personal and area insect repellent products." Additionally, SCJ owns a prior BUZZOFF mark for use in connection with insect-repellent products. According to SCJ, its "OFF! brand insect repellents are, by far, the largest selling insect repellents in the United States." However, despite its stated industry-leading status, SCJ contended that it was being unlawfully injured by defendants' marketing and advertising of the BOIS apparel.

In response to its perceived injury, SCJ sued defendants in federal court ("the Underlying Action") seeking redress for numerous injuries allegedly caused by defendants. In its "First Amended Complaint for Injunctive and Other Relief" ("Amended Complaint"), SCJ included causes of action for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (4) violation of the Illinois Uniform Deceptive Trade Practices Act; (5) violation of the North Carolina Unfair and Deceptive Trade Practices Act; (6) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (7) unjust enrichment. SCJ requested, *inter alia*, a permanent injunction and monetary damages.

Though denominated under seven causes of action, the Amended Complaint essentially asserted that SCJ had suffered two distinct injuries. First, SCJ claimed defendants caused injury by creating confusion over the origin of BOIS apparel because defendants' BUZZ OFF mark is very similar to SCJ's long-standing OFF!-based and BUZZOFF marks. Second, SCJ alleged damage resulting from defendants' advertisements concerning the efficacy of BOIS apparel, and since those advertisements were purportedly false, SCJ's injury was wrongful and compensable.

For the time period during which the actions alleged by SCJ in its Amended Complaint occurred, defendant IGT was covered by several policies of insurance. In 2003 defendant IGT purchased insurance coverage from Erie Insurance Exchange and Erie Insurance Com-

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[364 N.C. 1 (2010)]

pany (collectively "Erie") for the policy period from 25 April 2003 to 25 April 2004. The Erie policy was renewed following the initial policy period, but cancelled on 4 July 2004. In 2004 defendant IGT obtained insurance coverage from Harleysville Mutual Insurance Company ("Harleysville") for the policy period from 20 June 2004 to 20 June 2005.

After denying defendants' requests for assistance in defending the Underlying Action, Harleysville filed a declaratory judgment action against BOIS, IGT, and Erie in Superior Court, Guilford County. Harleysville contended that: (1) it owed no duty to BOIS because BOIS was not its insured; (2) it owed no duty to IGT because the language of its policy either did not provide coverage in the insuring agreement or excluded coverage otherwise granted; and (3) if there was coverage for the allegations in the Underlying Action, Erie alone was responsible for IGT's defense and indemnification. BOIS and IGT answered, counterclaimed against Harleysville, and cross-claimed against Erie, alleging that both policies provided coverage for SCJ's allegations and that the insurers had breached their insurance agreements in bad faith by failing to provide BOIS and IGT with a defense. Erie answered, counterclaimed, and cross-claimed, contending that: (1) BOIS was not an insured under the Erie policy; (2) the Erie policy does not cover the injuries SCJ alleged in its Amended Complaint; and (3) if SCJ's alleged injuries are covered by the insurance agreements, the injuries occurred during the Harleysville policy period and not the Erie policy period. Subsequently, after the case was designated exceptional, the trial court entered a Case Management Order that separated the duty to defend issue from the duty to indemnify and bad faith claims. The parties then filed cross-motions for summary judgment on the duty to defend issue.

By order entered 24 May 2007, the trial court granted partial summary judgment in favor of defendant IGT. After first determining that summary judgment was appropriate, the trial court concluded that the Harleysville and Erie policies provided coverage for the injuries SCJ had alleged and consequently, that Harleysville and Erie had a duty to defend IGT in the Underlying Action. The trial court also allowed in part Erie's and Harleysville's motions for summary judgment to the extent that BOIS is not insured under either insurance agreement. Following entry of summary judgment for IGT, Harleysville and Erie both filed motions to alter, amend, or vacate the judgment, which the trial court denied by order entered 25 June 2007.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

Harleysville and Erie appealed the 24 May 2007 and 25 June 2007 orders to the North Carolina Court of Appeals.

The majority of a divided panel at that court affirmed the trial court's orders. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 190 N.C. App. 28, 664 S.E.2d 317 (2008). Specifically, the majority held that the insuring agreement of each policy provided coverage for SCJ's claims and that neither the "Prior Publication" exclusion nor the "Quality or Performance of Goods" exclusion removed SCJ's claims from coverage under either the Harleysville or Erie policies. *Id.* at 34-36, 664 S.E.2d at 321-22. The dissenting judge expressed no opinion whether SCJ's alleged injuries were covered by the insuring agreement of the policies, but concluded that the "Quality Or Performance of Goods" exclusion precludes coverage in any event. *Id.* at 37, 41, 664 S.E.2d at 322, 324-25 (Geer, J., dissenting). Based on this dissent, Harleysville and Erie appealed as of right to this Court on the issue of whether the "Quality Or Performance of Goods" exclusion applies to deny insurance coverage for SCJ's allegations. On 9 October 2008, this Court allowed discretionary review of the question whether the "Material Published Prior To Policy Period" exclusion operates to bar coverage under the Harleysville policy.

## II. ANALYSIS

When the language of the insurance policies and the contents of the complaint are undisputed, we review de novo the question whether an insurer has an obligation to defend its insured against those allegations. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690-91, 340 S.E.2d 374, 377 (1986). To answer this question, we apply the "comparison test," reading the policies and the complaint "side-by-side . . . to determine whether the events as alleged are covered or excluded." *Id.* at 693, 340 S.E.2d at 378.

This Court ascertains whether an insurer has a duty to defend in a different manner than we determine whether an insurer has a duty to indemnify. We explained this difference in *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, in which we said that "[g]enerally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Id.* at 691, 340 S.E.2d at 377. To explain this difference in scope, we continued, "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Id.*; *see*

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

*also Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) ("An insurer's duty to defend a policy holder against a lawsuit is determined by the facts alleged in the pleadings." (citing *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377)). Thus, the duty to defend is broader than the duty to indemnify in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy. *Waste Mgmt.*, 315 N.C. at 692, 340 S.E.2d at 378 ("[T]hough the insurer is bound by the policy to defend 'groundless, false or fraudulent' lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend." (citations omitted)).

The difference in scope between the duty to defend and the duty to indemnify is based on the source of the factual narrative. *Id.* at 691, 340 S.E.2d at 377. In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend. Conversely, in determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as found by the trier of fact, then the insurer has a duty to indemnify. In addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury. The manner in which the duty to defend is "broader" than the duty to indemnify is that the statements of fact upon which the duty to defend is based may not, in reality, be true. As we observed in *Waste Management*, "[w]hen the pleadings state facts demonstrating that the alleged injury *is covered* by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* (emphasis added) (citations omitted).

To determine whether the allegations in the case *sub judice* are within the coverage afforded, we examine the language of the policies. The Harleysville and Erie policies both contain a Commercial General Liability Coverage Form, and the provisions of each policy at issue in this case are identical. The policies read in pertinent part:

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

## 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

. . . .

## 2. Exclusions

This insurance does not apply to:

. . . .

### g. Quality Or Performance Of Goods—Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

. . . .

### i. Infringement Of Copyright, Patent, Trademark or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

. . . .

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

 b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

 . . . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

 . . . .

 d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]

Thus, by their express terms, the Harleysville and Erie policies exclude from coverage certain types of "personal and advertising injury." Before we ascertain the meaning of the policy language to determine whether it encompasses the facts as alleged in SCJ's Amended Complaint, we must consider the long-standing rules of construction we apply to insurance policies.

As with all contracts, the object of construing an insurance policy "is to arrive at the insurance coverage intended by the parties when the policy was issued." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citations omitted). If the parties have defined a term in the agreement, then we must ascribe to the term the meaning the parties intended. *Id.* (citation omitted). We supply undefined, "nontechnical words . . . a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." *Id.* (citation omitted). We construe all clauses of an insurance policy together, "if possible, so as to bring them into harmony." 276 N.C. at 355, 172 S.E.2d at 522 (citation omitted). We deem all words "to have been put into the policy for a purpose," and we will give effect to each word if we can do so "by any reasonable construction." *Id.* (citation omitted).

This Court resolves any ambiguity in the words of an insurance policy against the insurance company. 276 N.C. at 354, 172 S.E.2d at 522 (citations omitted). We do so because the insurance company is the party that selected the words used. *Id.* Furthermore, this Court "construe[s] liberally" insurance policy provisions that extend cover-

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

age "so as to provide coverage, whenever possible by reasonable construction," *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) (citations omitted), and we strictly construe against an insurance company those provisions excluding coverage under an insurance policy, *id.* (citing *Wachovia Bank & Tr.*, 276 N.C. at 355, 172 S.E.2d at 523).

However, we only apply the preceding rules of construction when a provision in an insurance agreement is ambiguous. *Wachovia Bank & Tr.*, 276 N.C. at 354, 172 S.E.2d at 522. To be ambiguous, the language of an insurance policy provision must, "in the opinion of the court, [be] fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* (citation omitted). If the language is not "fairly and reasonably susceptible" to multiple constructions, then we "must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay." *Id.* (citations omitted).

In accordance with the foregoing principles, we now turn to the language of the insurance policies at issue in the case *sub judice*. In doing so, we are mindful that the dissenting judge at the Court of Appeals expressed no opinion about the breadth of the Insuring Agreement clause of the policies. *Harleysville Mut.*, 190 N.C. App. at 37, 664 S.E.2d at 322 (Geer, J., dissenting). Therefore, this issue is not before us and we also express no opinion whether the allegations in SCJ's Amended Complaint are within the Insuring Agreement clause of the policies. We simply assume *arguendo* that SCJ sought to recover for " 'personal and advertising injury' to which [the Harleysville and Erie policies] appl[y]." We now turn our attention to the language of the Failure to Conform exclusion in the Harleysville and Erie policies.

The Failure to Conform exclusion incorporates the parties' definition of "personal and advertising injury." According to the policies, to be "personal and advertising injury," the injury suffered by a plaintiff must arise from an enumerated "offense[]." The "offenses" listed in the policies, such as "slander[]" and "libel[]," are causes of action in tort. *See Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 746, 488 S.E.2d 234, 237 (1997). One of the offenses listed is "[o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or serv-

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[364 N.C. 1 (2010)]

ices." The policies do not further define this offense. Harleysville and Erie argue that this language restricts coverage to the tort of product disparagement. Defendant IGT contends, however, that the word "disparages" should be given its ordinary, dictionary definition, thereby allowing "personal and advertising injury" to result when an insured's advertisement " 'lower[s] in esteem or reputation' " a competitor's product.

Though the parties' readings of this phrase vary widely, we need not determine its precise contours to resolve the present controversy. Under any reading of this phrase, the definition of "personal and advertising injury" includes injury stemming from an "offense" involving the "publication . . . of material . . . [about] a person's or organization's goods, products or services." For the publication of material to constitute an offense, *i.e.*, tortious conduct, that material must be, *inter alia*, false. Because "personal and advertising injury" under the language of the policies can only result from an "offense," the published material must be, *inter alia*, false before injury in the ordinary sense of the word becomes "personal and advertising injury" as that term is used in the policies.

The Failure to Conform exclusion excludes actionable injury resulting from some false statements. The Failure to Conform exclusion removes from coverage that " '[p]ersonal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in" the insured's publications. "An injury 'arises out of' an excluded source of liability when it is proximately caused by that source." *Builders Mut.*, 361 N.C. at 88, 637 S.E.2d at 530 (citing *State Capital*, 318 N.C. at 547, 350 S.E.2d at 73-74). As such, the Failure to Conform exclusion envisions a scenario in which a plaintiff shows that an insured's product is, in reality, something different from what the insured has advertised. We have stated that "personal and advertising injury" includes injury resulting from tortious conduct involving, *inter alia*, a false statement. Thus, this exclusion removes from coverage "personal and advertising injury" proximately caused by a false statement an insured has made about its own product. *See R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002) ("Although Celestial's complaint against Bigelow included claims of false advertising, these claims did not trigger a duty to defend under the advertising injury provision because they concerned allegedly false claims about *Bigelow's* products, and such false claims about the insured products are explicitly excluded by the policy.").

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[364 N.C. 1 (2010)]

Defendant IGT, however, urges this Court to hold that the Failure to Conform exclusion was intended to prevent dissatisfied consumers from bringing a products liability action veiled as a false advertising claim and consequently, that the Failure to Conform exclusion should not apply to false advertising claims between competitors.[2] In support of this contention, defendant IGT explains that there is a distinction between, on the one hand, being injured by a product's failure to perform as advertised and, on the other hand, being injured by that product's advertisement. *See, e.g., Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp., Inc.*, No. 8:05CV315, 2007 WL 1290138, at *8 (D. Neb. Mar. 12, 2007) ("Alpharma's alleged injury is due to Pennfield's implicit disparagement of Alpharma's product and practices. Alpharma's injury—lost sales, profits and goodwill—would not be remedied if Pennfield's products were to conform to the allegedly false advertised quality. Accordingly, the court finds the failure to conform exclusion does not apply."). Defendant IGT then states that SCJ was allegedly injured by IGT's advertising, not by the failure of IGT's products to perform as advertised.

There is a distinction between being injured by an advertisement and being injured by a product's failure to perform as advertised. We agree that SCJ's alleged injury resulted from defendants' advertisements. In fact, SCJ explicitly stated in its Amended Complaint that defendants' "advertisements are likely to have caused and will likely . . . continue to cause SC Johnson to suffer substantial damages, including lost sales and lost profits." We also recognize that, as in *Pennfield Oil*, SCJ's alleged injuries would not be remedied if defendants' products performed as advertised. Generally speaking, SCJ would have suffered the same injury on account of defendants' advertisements whether or not those advertisements were true. Assuming *arguendo* that everything contained in defendants' advertisements was true, SCJ could have suffered the same injury, "lost sales and lost profits." Such is the nature of competition in the free market.

However, there is also a distinction between being injured by an advertisement and being wrongfully injured by an advertisement. A false advertisement leads to a similar injury, but it may give rise to a cause of action in which a plaintiff can recover for the damages suf-

---

2. We express no opinion on how any language in any part of the insurance policies may affect insurance coverage, if any, in a false advertising action brought by a consumer.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

fered. Thus, even though SCJ suffers the same type of injury whether or not the advertisement is false, SCJ may only recover damages on account of its injury when the advertisement is false. The remedy for the injury inflicted by a truthful advertisement is found in the marketplace, not in the courthouse. As the policies in the case *sub judice* cover only that injury resulting from an "offense[]," the injury suffered must be actionable, meaning here, resulting from a false statement, to constitute "personal and advertising injury" as that term is used in the policies. As such, defendant IGT's construction of the language of the Failure to Conform exclusion is untenable and does not render the provision ambiguous. This Court, finding no ambiguity in the policies' provision at issue, must interpret the language of the Failure to Conform exclusion as the parties intended, as expressed by their chosen words. *Wachovia Bank & Tr.*, 276 N.C. at 354, 172 S.E.2d at 522. The Failure to Conform exclusion envisions an insured's false advertisement that causes injury, and the exclusion removes from coverage potential "personal and advertising injury" suffered from a false advertisement, when the falsity "aris[es] out of the failure of goods . . . to conform with . . . statement[s] of quality or performance made in [the insured's] 'advertisement.' "

Now, having determined the meaning of the Failure to Conform exclusion of the policies, we must review SCJ's allegations to determine whether the Harleysville and Erie policies provide coverage for the injury allegedly suffered by SCJ. To accomplish this, we will examine the portions of SCJ's Amended Complaint that contain allegations of false advertising because the parties agree that false advertising is the only claim made by SCJ that possibly enjoys insurance coverage.

SCJ devotes numerous pages of its Amended Complaint to detailing defendants' allegedly false statements in various media. The introductory section of the Amended Complaint provides an overview of SCJ's claims, contending that defendants, through their own advertisements and those of the BOIS Partners and BOIS Partner Affiliates, made "materially false and misleading advertising claims about the efficacy, use, and product attributes of BUZZ OFF Insect Repellent Apparel." Later in its Amended Complaint, SCJ utilizes an entire section for its allegations of defendants' false advertising.

This false advertising section, entitled "Allegations Relating to Defendants' False Advertising," contains eight subsections. The first four subsections focus on the alleged falsity of defendants' claims

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

that BOIS apparel protects both covered and exposed skin from insect bites. The fifth subsection addresses defendants' allegedly inaccurate statements that BOIS apparel remains effective through twenty-five laundry cycles. The sixth subsection emphasizes defendants' allegedly untrue contentions that BOIS apparel is treated with a natural insecticide. The seventh subsection illustrates an alleged contradiction between defendants' advertisements and the labels on the BOIS apparel. In the final subsection, SCJ condenses its various prior allegations of defendants' false advertising.

The first subsection of the false advertising section of SCJ's Amended Complaint is entitled "False Efficacy Claims on BOIS's Website." The allegations in that subsection state in part:

> 90. BOIS's website . . . makes several claims that falsely and unambiguously communicate that (a) by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) BUZZ OFF Insect Repellent Apparel protects uncovered skin from mosquito bites, (c) if you wear BUZZ OFF Insect Repellent Apparel, you will not receive any mosquito bites, and (d) BUZZ OFF Insect Repellent Apparel is equivalent to or superior in performance to topical insect repellents, such as those containing DEET.

SCJ then provides examples of statements from BOIS's website that support these allegations. SCJ listed the following examples:

> a) Under the BOIS website heading, BUZZ OFF *Facts*, the Defendants claim that BUZZ OFF Insect Repellent Apparel reduces the need to apply personal repellents to the skin, the application of which is described as "messy" and a "hassle": "Worry Free and Convenient—*Wearing BUZZ OFF apparel reduces the need to apply insect-repellent creams, lotions or sprays directly to the skin.* Although topical insect repellents may be effective, especially those containing DEET, many customers are wary of overuse. In addition, *applying repellents to the skin can be messy and frequent re-application is a hassle.*"

> b) The BOIS website includes a link to "BUZZ OFF In the News," which excerpts language from news articles and provides links to the articles in their entirety, the full text of which can be accessed for a fee. One article excerpt includes the claim: "*Imagine walking through the north woods with . . . no spray cans, no creams, no DEET . . . no way! Until Now. Orvis just introduced a new*

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

*line of clothing called BUZZ OFF that erases the need for other insect repellents.* . . . In spite of all the credentials, patents and hoopla, we don't hand out Editor's Choice Awards without extensive testing, so *we sent Bill Battles to Ontario in the stuff* . . . . *He swears that not a single one landed anywhere on him, and that's good enough for us.*"

c) In a section titled "BUZZ OFF Facts," under a heading titled "Proven Effective," BOIS claims, "The developers of BUZZ OFF Insect Shield[TM] have conducted numerous studies to confirm its effectiveness. BUZZ OFF apparel has been shown to be highly effective through 25 washings. By contrast, insect repellents applied directly to the skin range in effectiveness and last from several minutes to several hours."

d) One claim suggests that the clothing provides a barrier around the wearer: "The BUZZ OFF process tightly binds the active ingredient to the garment, creating an invisible and odorless protection for the wearer."

d) [sic] "I would absolutely choose BUZZ OFF Apparel [over spray or lotion repellents], because it was actually more effective for me, and because I didn't have to completely slather myself with insect repellent. . . ."

e) "BUZZ OFF definitely allowed me to work in areas that would have been impossible to tolerate without applying some kind of insect repellent. One of the good things about these clothes is that you don't have to be constantly re-applying chemicals to your skin."

f) "This year we wore BUZZ OFF treated clothes, and even though the flies and mosquitoes were as bad as ever, *we got nearly perfect protection from them without having to use any insect repellent at all.* Instead of the dozens of mosquito and black fly bites I have gotten in previous years, with BUZZ OFF I got only one bite from a black fly which flew up in my sleeve and got trapped there. I took Deep Woods OFF! in my tackle box but never even got it out. In short, in 20 years of these fishing trips, no matter how much DEET I used, I don't think I ever came back with fewer than 25 black fly bites. *This year with BUZZ OFF clothes and no DEET at all, I got only one black fly bite—and not even one mosquito bite.*"

16　　　　　IN THE SUPREME COURT

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

g) "I was wearing my BUZZ OFF shirt and hat and there was literally a force field of B52-sized skeeters around me, and not a one landed on me or touched me."

h) "I recently went down to the Amazon rain forest of Ecuador . . . . I hiked at all times of the day and night. . . . I never had any problems with any ants or other insects biting me [. . .] While I was down there I wore nothing but BUZZ OFF clothing and never had to put a single drop of insect repellant [sic] on the entire time. . . ."

(ellipses and italics as shown in complaint) (footnotes omitted). As SCJ contends, these examples "reinforce[] [the BOIS website's] claims by emphasizing the 'hassle' of applying 'messy' insect-repellent products directly to the skin."

In the second subsection, entitled "Similar False Claims on the BOIS Partners' Websites," SCJ reiterates the allegations made in the first subsection and here attributes them to the BOIS Partners' websites as well. To support its allegations, SCJ enumerates examples of text from the BOIS Partners' websites:

a) BUZZ OFF apparel ". . . creates an *invisible and odorless barrier that . . . provides protection from mosquitoes . . . .*"

b) BUZZ OFF apparel "provides the entire family with immediate protection from mosquitoes, ticks and other annoying and potentially life-threatening insects, simply by *wearing* the product. . . . *BUZZ OFF Insect Repellent Apparel works by creating an invisible and odorless protective barrier around the clothes and body.*"

c) "Ex Officio's innovative new BUZZ OFF apparel provides immediate protection from mosquitoes, ticks and other potentially life-threatening insects, *simply by wearing the product.*"

d) BUZZ OFF apparel "makes spray and lotion repellents obsolete."

e) ". . . enjoy the outdoors while reducing the nuisance of applying nasty insect-repellent lotions and sprays."

f) With BUZZ OFF apparel, referred to as "The Insect Repellent Alternative," "you no longer have to reapply repellent all day long, or get bitten when sprays or liquids start to wear off and lose their effectiveness."

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[364 N.C. 1 (2010)]

g) "Wear shorts. Not bug spray."

h) *"Say good-bye to annoying bugs and messy sprays . . .* [BUZZ OFF apparel] provides reliable, proven protection from mosquitoes. . . . Odorless and invisible . . . *there's no need to keep applying messy sprays.* It's as easy as putting on a pair of pants or a shirt. . . . *As long as you are wearing BUZZ OFF apparel, you're protected. . . . Clothing that repels insects as effectively as sprays—without the mess."*

i) "BUZZ OFF is proven to be as effective as bug spray. But, because it's odorless you can relax at the outdoor table without the unappetizing odor or the greasy feel of other repellents."

j) "Effective: Works like bug spray in repelling mosquitoes . . . ."

k) "It provides the benefits of bug spray without the constant reapplication, so you'll dramatically reduce the number of insect bites without ever having to coat (and recoat) yourself with a spray or cream. . . . It is truly the insect repellent alternative."

l) BUZZ OFF apparel is "as effective as bug spray or cream," there is "[n]o need to constantly apply & re-apply repellent" and it reduces "the need for sprays or creams."

(ellipses and italics as shown in complaint) (footnotes omitted). SCJ uses these examples to illustrate that the BOIS Partners "reinforce" BOIS's alleged claims touting the efficacy of the BOIS apparel.

The third subsection, entitled "Similar False Claims in Catalog and Print Advertisements of the BOIS Partners," alleges that "the BOIS Partners . . . also make several claims that falsely and unambiguously communicate that, by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin and that BUZZ OFF apparel protects uncovered skin." SCJ provides quotations from the BOIS Partners' advertisements to support its allegation:

a) "For effective, odorless protection against biting insects . . . simply pop on this comfortable 3.4-oz. Marquesas$^{TM}$ cotton shirt. Ideal with BUZZ OFF$^{TM}$ pants for *full protection.*"

b) "BUZZ OFF$^{TM}$ gives you the protection of insect repellent spray without having to keep reapplying oily chemicals to your skin."

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

c) "It's as easy as putting on a pair of pants or a shirt, and it's durable—it continues to repel insects through 25 washings. *As long as you are wearing BUZZ OFF apparel, you're protected."*

(ellipsis and italics as shown in complaint) (footnotes omitted). SCJ further alleges that one BOIS Partner went "so far as to claim that BUZZ OFF apparel provides a 'force field' around wearers of the clothing." In support of this allegation, SCJ provided the following examples: "a) 'Give yourself a bug and sun repellent force field' "; and "b) 'This holiday season . . . give a bug and sun repellent force field.' " (ellipsis as shown in complaint) (footnotes omitted).

In the fourth subsection, entitled "SC Johnson Studies Show that BUZZ OFF Apparel Has No Material Repellent Effect on Uncovered Skin and Does Not Prevent Mosquito Bites Even on Covered Skin," SCJ contends it tested BOIS apparel and found BOIS's claims that BOIS apparel protects unexposed and exposed skin from insect bites to be false.

In the Amended Complaint's fifth subsection, SCJ claims that defendants falsely advertise BOIS apparel as remaining effective through twenty-five laundry cycles. This subsection, "False Advertising Claiming that BUZZ OFF Insect Repellent Apparel is effective through 25 washings," states in part:

102. BOIS advertising includes several variations of the false and misleading claim that BUZZ OFF Insect Repellent Apparel is highly effective through 25 washings. Variations appear on the BOIS website, the BOIS Partners' websites and in print advertisements. Additionally, the claim appears on all stitched-on tags and hang tags of BUZZ OFF Insect Repellent Apparel, and thus all consumers who purchase the product see the claim.

103. The following are some examples of the claims on the BOIS website:

a) In a section titled "BUZZ OFF Facts," under a heading titled "Proven Effective," BOIS claims, "The developers of BUZZ OFF Insect Shield[TM] have conducted numerous studies to confirm its effectiveness. BUZZ OFF apparel has been sho*wn to be highly effective through 25 washings.* By contrast, insect repellents applied directly to the skin range in effectiveness and last from several minutes to several hours."

IN THE SUPREME COURT 19

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

b) In that same section, under a heading titled, "Long Lasting," BOIS claims, "*The repellent quality is effective even after repeated washings. BUZZ OFF apparel will continue to repel insects through 25 washings*, the approximate effective life of the garment, according to the International Fabricare Institute. . . ."

104. The tags on all BUZZ OFF Insect Repellent Apparel state: "Repellency remains effective for 25 washings."

105. Some examples of the variations of the claim found on the BOIS Partners' websites and print advertisements, include:

a) "Odorless and invisible, BUZZ OFF repellent is bonded to the clothing so there's no need to keep applying messy sprays. It's as easy as putting on a pair of pants or a shirt, and it's durable—*BUZZ OFF protection continues to repel insects through 25 washings*. As long as you are wearing BUZZ OFF apparel, you're protected."

b) "BUZZ OFF[TM] apparel provides effective protection from insects through 25 washings."

c) The Orvis website includes the following claims, one of which is that BUZZ OFF Insect Repellent Apparel may be effective for <u>more than</u> 25 washings: "Through a patent-pending process, BUZZ OFF insect shield apparel by Orvis *provides protection from biting insects for 25 washings*, the average useful life of your clothes;" "Lasting: *Repels insects through 25 washings*;" and "Effective through *at least 25 washings*."

d) The Bass Pro Shops website also includes a claim that BUZZ OFF Insect Repellent Apparel may be effective for <u>at least</u> 25 washings: "Buzz Off insect repellent is *effective through 25+ launderings*;" "Lasting: Remains *effective through 25 washings*;" and "Reducing the need for sprays or creams, this protection is bonded into the fabric and is odorless, invisible and *proven effective through 25 washings*."

106. SC Johnson conducted additional tests to assess whether BUZZ OFF Insect Repellent Apparel in fact continues to prevent mosquito bites on covered skin for 25 washings. The tests demonstrated that, contrary to the Defendants' claims, test participants wearing BUZZ OFF Insect Repellent Apparel re-

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

ceived multiple mosquito bites on covered skin after only a small period of time even when the shirts they wore had never been washed.

107. Moreover, when the shirts they wore had been washed as few as five and ten times, the test participants received large numbers of bites on covered skin during only a brief period of exposure to mosquitoes.

(ellipsis and italics as shown in complaint) (footnotes omitted). This subsection thus essentially claims defendants falsely portray their products as being effective longer than the products actually remain effective.

SCJ uses the sixth subsection, "False Advertising Claiming That BUZZ OFF Insect Repellent Apparel Contains A Version of a Natural Insecticide That is Derived From Chrysanthemum Flowers," to address defendants' claim that BOIS apparel's treating agent is naturally derived. SCJ contends that:

108. BOIS advertising materials contain several variations of a false and misleading claim that BUZZ OFF Insect Repellent Apparel contains a version of a natural insecticide that is derived from chrysanthemum flowers. With these false and misleading claims, the Defendants are deceiving consumers into believing that BUZZ OFF Insect Repellent Apparel, or its active ingredient, is a natural product rather than a synthetic chemical, when it in fact is the latter.

109. Defendants engage in this deception by confusing pyrethrum, which is a natural insecticide derived from chrysanthemum flowers, but is *not* an ingredient of Defendants' products, with permethrin, the active chemical in BUZZ OFF Insect Repellent Apparel, which is a molecularly-distinct, synthetic chemical that is no more a natural product than DEET, the active ingredient in many topical insect repellents, including SC Johnson's OFF! brand repellents.

110. The following are some examples of the false claims that appear in the advertising of Defendants and BOIS Partners:

a) An article excerpt from the "BUZZ OFF In the News" link, claims that "[t]he BUZZ OFF secret lies in its ability to bind permethrin (a man-made insect repellent occurring naturally in chrysanthemums) to clothing," an ingredient that it describes as "odorless and invisible."

IN THE SUPREME COURT 21

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

b) "BUZZ OFF Insect Shield builds a man-made version of a centuries-old insect repellent derived from the chrysanthemum plant directly into your clothes."

c) "How does it work? BUZZ OFF Insect Shield builds into your clothes a man-made version of a centuries-old insect repellent made from chrysanthemums."

d) "BUZZ OFF™ Insect Shield Insect Repellent Apparel is a revolutionary new product that combines Permethrin, a man-made form of a natural insect repellent found in the Chrysanthemum plant, with a new patent-pending process."

111. The claim that "a man-made version of a centuries-old insect repellent made from chrysanthemums" is built into BUZZ OFF Insect Repellent Apparel is deceptive in that it falsely communicates to consumers that BUZZ OFF Insect Repellent Apparel is a more natural option than traditional insect-repellent products, like those marketed under SC Johnson's OFF! brand, which contain chemical repellents, such as DEET. This claim also falsely communicates that BUZZ OFF Insect Repellent Apparel and/or the active ingredient in the apparel is made from chrysanthemums or is natural.

(footnotes omitted). Then, again returning to all claims allegedly made by defendants and the BOIS Partners, SCJ states that:

112. These messages are materially false and deceptive because permethrin is a chemical ingredient in the same way that DEET is a chemical ingredient, and permethrin is a synthetic chemical compound that is not derived from flowers.

113. The claim exploits the desire of consumers for natural products, including insect repellents. Consumers who rely on such misleading and deceptive statements are likely to use BUZZ OFF Insect Repellent Apparel to the exclusion of DEET-containing products such as OFF!, despite the fact that BUZZ OFF Insect Repellent Apparel provides protection from mosquitoes that is clearly inferior to the protection provided by topical repellents containing DEET, and thus potentially endangers the user's health.

114. Consumers could also be encouraged by these false and misleading claims to ignore the safe storage and disposal instructions required by law to be disclosed on BUZZ OFF apparel.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

Ultimately, SCJ uses this subsection to allege that, despite defendants' advertising claims to the contrary, both OFF! and BUZZ OFF apparel use chemical repellents.

In the seventh subsection, entitled "Defendants' False Advertising Directly Conflicts with the Labels on the Apparel," SCJ alleges that defendants' advertisements convey a message contrary to the language found on the BOIS apparel tags. Specifically, SCJ states:

116. The EPA registration of BUZZ OFF Insect Repellent Apparel requires that the product label contain specific information about how to provide insect-repellent protection for skin that is not covered by the apparel, about the "life" of the product (*i.e.*, the amount of "washings" for which the product is effective), and care and disposal instructions.

117. The EPA requires that all labels include the statement: "For protection of exposed skin, *use in conjunction with an insect repellent registered for direct application to skin.*"

(italics as shown in complaint) (footnote omitted). SCJ contends that EPA's mandate "reflects EPA's recognition that the efficacy of BUZZ OFF Insect Repellent Apparel is limited to the areas of the body actually covered by the apparel, and that the product does not adequately protect uncovered skin from mosquito and other insect bites." Finally, after stating that defendants' advertisements lack this EPA information, SCJ concludes by claiming that "the advertising is in direct conflict with EPA registration requirements" in that it "communicat[es] that by using BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply 'messy' insect repellent products on the skin."

In the eighth and final subsection, entitled "The Falsity of the Claims on Websites and in the Print Advertising," SCJ consolidates and recounts its prior allegations. SCJ states that:

121. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements intentionally mislead, confuse and deceive consumers by communicating that (a) by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) BUZZ OFF Insect Repellent Apparel protects uncovered skin from mosquito bites, (c) if you wear BUZZ OFF Insect Repellent Apparel, you

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

will not receive any mosquito bites, and (d) BUZZ OFF Insect Repellent Apparel is equivalent to or superior in performance to topical insect repellents, such as those containing DEET.

122. These claims are materially false and deceptive, and pose a significant health and safety risk to consumers because wearing BUZZ OFF Insect Repellent Apparel does not reduce or eliminate the need to apply an insect-repellent product on the skin, BUZZ OFF Insect Repellent Apparel does not protect adjacent, uncovered and untreated skin from mosquito bites, BUZZ OFF Insect Repellent Apparel does not prevent consumers who wear it from receiving mosquito bites, and BUZZ OFF Insect Repellent Apparel is not equivalent to or superior in performance to topical insect repellents, such as those containing DEET.

123. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements also intentionally mislead, confuse and deceive consumers by communicating that BUZZ OFF Insect Repellent Apparel is effective through 25 washings.

124. This claim is materially false and deceptive, and poses a significant health and safety risk to consumers because BUZZ OFF Insect Repellent Apparel does not prevent mosquito bites on covered skin through 25 washings.

125. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements also intentionally mislead, confuse and deceive consumers by communicating that the active ingredient in BUZZ OFF Insect Repellent Apparel is made from chrysanthemum flowers and/or contains a version of a natural insect repellent that is derived from chrysanthemum flowers and/or is a more natural option than traditional repellents such as SC Johnson's OFF! Brand, which contain the chemical DEET.

126. These claims are materially false and deceptive because the active ingredient in BUZZ OFF Insect Repellent Apparel is a synthetic chemical that is not derived from chrysanthemum flowers nor does it contain a version of a natural insect repellent that is derived from chrysanthemum flowers, nor is it a more natural option than topical repellents containing DEET.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

127. The aforesaid advertising constitutes commercial advertising or promotion within the meaning of the Lanham Act.

128. Further, the Defendants' false and misleading claims on the BOIS website, on the websites of the BOIS Partners, on the websites of the companies that are, upon information and belief BOIS Partner Affiliates and in the BOIS Partner catalogs and other print advertisements are likely to have caused and will likely to [sic] continue to cause SC Johnson to suffer substantial damages, including lost sales and lost profits.

129. Upon information and belief, the Defendants' false and misleading claims on the BOIS website, on the websites of the BOIS Partners, on the websites of the companies that are, upon information and belief BOIS Partner Affiliates and in the BOIS Partner catalogs and other print advertisements were and are intended to mislead and deceive purchasers into purchasing BUZZ OFF Insect Repellent Apparel instead of SC Johnson's OFF! brand personal insect repellents.

130. Upon information and belief, the foregoing actions of BOIS were undertaken willfully and wantonly, and with a conscious disregard for SC Johnson's rights.

131. The foregoing acts have occurred in, or in a manner affecting, interstate commerce.

This recitation appears to be SCJ's effort to set forth its claim under the Lanham Act.

Under the Lanham Act a plaintiff may sue a competitor when that competitor's advertisements misrepresent the qualities or characteristics of its own goods or products or of the plaintiff's goods or products. *See* 15 U.S.C. § 1125(a)(1)(B) (2006). The parties do not seem to dispute that SCJ alleged all the elements of a claim under the Lanham Act; they only appear to disagree whether SCJ claimed that defendants made false statements of fact regarding their own or SCJ's products. With the understanding that a plaintiff can recover damages under the Lanham Act when a defendant's advertising contains false statements regarding either defendant's own products or plaintiff's products, and having set forth in detail the allegations contained in SCJ's Amended Complaint, we now "strip[] to [its] essentials," *Waste Mgmt.*, 315 N.C. at 692, 340 S.E.2d at 378, the Amended Complaint to ascertain the gravamen of SCJ's claim.

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

SCJ's Amended Complaint alleges that the BOIS apparel was not of the quality and did not perform as well as defendants represented in their advertisements. In the portion of its Amended Complaint in which SCJ recounts its false advertising allegations, SCJ says:

121. The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements . . . [state] that (a) *by wearing BUZZ OFF Insect Repellent Apparel,* consumers can reduce or eliminate the need to apply an insect-repellent product on the skin, (b) *BUZZ OFF Insect Repellent Apparel protects* uncovered skin from mosquito bites, (c) if you *wear BUZZ OFF Insect Repellent Apparel,* you will not receive any mosquito bites, and (d) *BUZZ OFF Insect Repellent Apparel is equivalent* to or superior in performance to topical insect repellents, such as those containing DEET.

122. These claims are materially false and deceptive . . . *because* wearing BUZZ OFF Insect Repellent Apparel *does not reduce or eliminate the need to apply an insect-repellent product on the skin,* BUZZ OFF Insect Repellent Apparel *does not protect adjacent, uncovered and untreated skin from mosquito bites,* BUZZ OFF Insect Repellent Apparel *does not prevent consumers who wear it from receiving mosquito bites,* and BUZZ OFF Insect Repellent Apparel *is not equivalent to or superior in performance to topical insect repellents, such as those containing DEET.*

(emphases added). These two paragraphs of SCJ's Amended Complaint capture the essence of the claim: defendants' statements about their own products were literally not true. Further, SCJ states that defendants' claims that "BUZZ OFF Insect Repellent Apparel is effective through 25 washings" are "false . . . *because* BUZZ OFF Insect Repellent Apparel *does not prevent mosquito bites on covered skin through 25 washings.*" (emphases added). This claim, too, is an allegation by SCJ that defendants made an untrue statement about their own products. Finally, SCJ alleges that defendants' statement that "the active ingredient in BUZZ OFF Insect Repellent Apparel is made from chrysanthemum flowers and/or contains a version of a natural insect repellent that is derived from chrysanthemum flowers and/or is a more natural option than traditional repellents such as SC Johnson's OFF! Brand" is "false . . . *because* the active ingredient in BUZZ OFF Insect Repellent Apparel is a synthetic chemical that is

**HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.**

[364 N.C. 1 (2010)]

not derived from chrysanthemum flowers nor does it contain a version of a natural insect repellent that is derived from chrysanthemum flowers, nor is it a more natural option than topical repellents." (emphasis added). As with SCJ's other allegations, this is a claim that defendants made a false statement about their own products. As SCJ's allegations are that defendants made statements about their own products that were not true, the gravamen of SCJ's false advertising claim is that defendants made false statements regarding the efficacy of their own products.

Defendant IGT contends that SCJ also alleged that defendants made false statements about SCJ's products. Specifically, IGT argues that the Amended Complaint recited three different categories of defendants' false statements about SCJ's products. First, SCJ stated that defendants made false representations that SCJ's products were less effective than the BOIS apparel, including one advertisement that mentions SCJ's "Deep Woods OFF!" by name and "suggests that topical repellents . . . are inferior to Buzz Off Apparel for repelling insects." Second, SCJ emphasized that defendants' advertisements repeatedly maintained that topical insect repellents are "messy," "nasty," and a "hassle" to apply. Third, SCJ alleged that defendants "made false and disparaging statements implying that topical repellents—such as S.C. Johnson's OFF!—are less safe than apparel due to their chemical constituents, specifically DEET." These allegations, defendant IGT contends, show that SCJ was also complaining of defendants' false statements about SCJ's products. We note that there may be support for defendant IGT's argument that these allegations involve false statements about SCJ's products. *See, e.g., DecisionOne Corp. v. ITT Hartford Ins. Grp.*, 942 F. Supp. 1038, 1043 (E.D. Pa. 1996) (explaining that an entity's false comparisons between its and a competitor's products are untrue statements about the competitor's products).

We address in turn each of defendant IGT's three categories of allegedly false statements about SCJ's products. First, we agree that SCJ claims to be false defendants' contention that "BUZZ OFF Insect Repellent Apparel is equivalent to or superior in performance to topical insect repellents, such as those containing DEET." However, that comparison is alleged to be false not because defendants made representations that SCJ's products were ineffective, but because defendants made allegedly false claims that their products worked just as well as, if not better than, SCJ's products. As such, the alleged falsity of the advertisements arises from the failure of defendants'

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

products to actually perform as well as defendants claim they perform. Second, we agree that SCJ contends that defendants used adjectives such as "messy," "nasty," "unappetizing," and "greasy" to describe topical insect repellents and characterized the application of those repellents as a "hassle" and a "nuisance." At no point, however, does SCJ contend that these terms falsely describe SCJ's products. Moreover, given the subjective nature of these terms, we question whether such descriptive terms are actionable statements of fact. *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability." (citation omitted)). Third, we agree with defendant IGT that SCJ alleged that defendants made false statements indicating that their insect repellent was naturally derived. We disagree, however, with defendant IGT's contention that SCJ complained that defendants characterized the use of topical insect repellents as unsafe. In fact, SCJ explicitly stated that defendants' claims of a naturally derived insecticide were likely to cause SCJ injury because of a consumer desire "for natural products." Furthermore, SCJ made clear that defendants' claim was false because defendants' insect repellent "is a synthetic chemical compound that is not derived from flowers." We therefore conclude that while SCJ did allege that defendants' advertisements portrayed SCJ's products in a negative light, the alleged falsity of that portrayal lies solely in the alleged failure of defendants' products to be of the quality and as effective as defendants claimed.

In short, SCJ gave notice with its Amended Complaint that it intended to put defendants' products on trial, not its own. SCJ alleged that defendants advertised their products as having certain characteristics and as being of a certain nature. SCJ also said that it had tested defendants' products and found them not to have those claimed characteristics or that claimed nature. Finally, SCJ said it was going to prove (1) that defendants made certain statements about their own products and (2) that those statements were not true because defendants' products were not as defendants said. Conspicuously absent is any statement from SCJ that it intended to prove anything about defendants' statements characterizing SCJ's products.

After carefully reviewing the Amended Complaint, we conclude that SCJ averred that its alleged false advertising injury resulted from an apparent failure of defendants' products to be of the nature and quality advertised. While SCJ did allege that defendants made other

HARLEYSVILLE MUT. INS. CO. v. BUZZ OFF INSECT SHIELD, L.L.C.

[364 N.C. 1 (2010)]

descriptive statements placing SCJ's products in an unappealing light, SCJ did not allege that these characterizations were false. The only falsity allegedly found in defendants' advertisements was that the BOIS apparel was not of advertised quality and did not work as well as defendants claimed.

Earlier we stated that the Failure to Conform exclusion encompasses allegations that an insured has made false statements about its own products. Under the language of the insurance policies, the Failure to Conform exclusion applies when the falsity resulting in the "personal and advertising injury" is caused by "the failure of goods . . . to conform with . . . statement[s] of quality or performance made in [the insured's] 'advertisement'." We express no opinion on what, if any, other circumstances fall within this particular exclusion from coverage under the insurance policies here.

As we stated in *Waste Management*, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings." 315 N.C. at 691, 340 S.E.2d at 377. Further, "when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Id.* Here, SCJ's Amended Complaint alleged facts indicating that the only falsity found in defendants' advertisements resulted from the failure of defendants' own products to be of their advertised quality and nature, placing the falsity of those advertisements squarely within the insurance policies' Failure to Conform exclusion. Therefore, we hold that the Failure to Conform exclusion relieved Harleysville and Erie of any duty to defend IGT against the allegations in SCJ's Amended Complaint.

### III. DISPOSITION

As to the issue before this Court on appeal as of right, the Court of Appeals erred in holding that the Failure to Conform exclusion did not bar coverage for the injury alleged in SCJ's Amended Complaint. That portion of the Court of Appeals' decision is therefore reversed. In light of our holding here, we necessarily do not reach the question whether the Prior Publication exclusion is implicated with respect to the Harleysville policy and thus conclude that discretionary review of that issue was improvidently allowed. The remaining issues addressed by the Court of Appeals majority are not before us and its decision as to those issues therefore remains undisturbed. Accordingly, we remand this case to the Court of Appeals for further remand to the Superior Court, Guilford County, for entry of

summary judgment on the issue of the insurers' duty to defend in favor of Erie and Harleysville and for further proceedings not inconsistent with this opinion.

REVERSED IN PART AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.