Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2020 NCBC 44.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING
SCOPE OF COVERAGE AND
DEFENDANTS' CONDITIONAL
CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING
ALLOCATION**

1.     **THIS MATTER** is before the Court on (i) the Motion of Plaintiffs Duke Energy Carolinas, LLC ("DEC") and Duke Energy Progress, LLC ("DEP") (together, "Duke") for Partial Summary Judgment Regarding Scope of Coverage ("Duke's Motion") against Defendant TIG Insurance Company ("TIG"), as successor to Ranger Insurance Company ("Ranger") (together with Defendant Associated Electric & Gas Insurance Services Limited ("AEGIS"), "AEGIS/TIG"), filed January 7, 2019, (ECF No. 455), and (ii) Defendants'[1] Motion for Partial Summary Judgment

---

[1] The moving Defendants (collectively, the "Cross-Motion Defendants") include Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.); Allianz Global Risks US Insurance Company (f/k/a Allianz Insurance Company); Allstate Insurance Company, solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company (f/k/a Northbrook Insurance Company); Arrowood Indemnity Company (f/k/a Royal Indemnity Company); Assurances Générales de France n/k/a Allianz IARD; Century Indemnity Company ("Century"), as successor to California Union Insurance Company; The Continental Insurance Company for London Guarantee and Accident Company of New York; Federal Insurance Company ("Federal"); Fireman's Fund Insurance Company; First State Insurance Company; General Reinsurance Corporation, as successor to North Star Reinsurance Corporation; Old Republic Insurance Company; Pacific Employers Insurance Company ("PEIC"); Twin City Fire Insurance Company; and United States Fire Insurance Company.

Regarding Allocation (the "Cross-Motion") (together with Duke's Motion, the "Motions") filed November 26, 2019, (ECF No. 577).

2. Having considered the Motions, the materials submitted in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **GRANTS** Duke's Motion and **DEFERS** ruling on the Cross-Motion for the reasons set forth below.

> *Pillsbury Winthrop Shaw Pittman LLP, by Mark J. Plumer, Matthew G. Jeweler, Barry Fleishman, Aaron D. Coombs, William C. Miller, and Jeffrey W. Mikoni, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*
>
> *Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Steven M. Zuckermann, and Greg E. Mann, and Goldberg Segalla, by David G. Harris, II and David L. Brown, for Defendants Associated Electric and Gas Insurance Services Ltd., Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*
>
> *O'Melveny & Myers, LLP, by Jonathan Hacker and Bradley Garcia, White and Williams, LLP, by Shane Heskin and Eric Hermanson, Fitzgerald Litigation, by Andrew L. Fitzgerald, and Cohn Baughman & Martin, by Frank Slepicka, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*
>
> *Hogan Lovells US LLP, by David Newmann, for Defendant Assurances Générales de France.*
>
> *Freeborn & Peters LLP, by Bruce M. Engel, for Defendant Arrowood Indemnity Company.*
>
> *Saiber LLC, by Michael J. Balch, for Defendant General Reinsurance Corporation.*
>
> *Clausen Miller P.C., by Ilene Korey, and Fox Rothschild LLP, by Jeffrey P. MacHarg, for Defendant Old Republic Insurance Company.*

*Kennedys CMK LLP, by John D. LaBarbera, and James, McElroy & Diehl, P.A., by Adam L. Ross, for Defendant United States Fire Insurance Company.*

*Karbal Cohen Economou Silk Dunne LLC, by Dena Economou, and Shipman & Goodwin LLP, by James Ruggeri, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*Squire Patton Boggs (US) LLP, by Paul Kalish, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Jackson & Campbell PC, by Erin N. McGonagle and Christopher M. Quinlan, and Butler Weihmuller Katz Craig LLP, by L. Andrew Watson, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*Hinkhouse Williams Walsh LLP, by William C. Joern, for Defendant Continental Insurance Company.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke, for Defendant Allstate Insurance Company.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3. This action focuses on whether Defendants—all insurers who issued excess level insurance policies to Duke's predecessors Duke Power Company ("Duke Power") (now DEC) and Carolina Power & Light Company ("CP&L") (now DEP)— are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at fifteen Duke-owned power plants in North and South Carolina.

4. The Court does not make findings of fact on motions for summary judgment; rather, the Court summarizes material facts it considers to be uncontested. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975).

5. Duke's Motion concerns the scope of coverage under two insurance policies Ranger issued to Duke's predecessors CP&L (Policy No. EUL300578) and Duke Power (Policy No. EUL300579) for the premium period from October 31, 1984 to October 31, 1985 (the "Ranger Policies" or the "Policies").[2] (Ex. C Policy Stipulation, ECF No. 457.4; Ex. D Ranger Policy No. EUL300578 issued to CP&L (Stipulated Version) [hereinafter "CP&L Ranger Policy"], ECF No. 457.5; Ex. E Ranger Policy No. EUL300579 issued to Duke Power (Stipulated Version) [hereinafter "Duke Power Ranger Policy"], ECF No. 457.6.)

6. The Ranger Policies are per-occurrence policies and require Ranger to pay separately, up to its policy limit, for each "occurrence" (as defined in the Policies) that Duke can prove. Each Policy has a $25 million per-occurrence limit. Before Duke reaches its coverage, however, Duke is contractually obligated to pay a self-insured retention ("SIR") of $500,000 on the Policy issued to CP&L and $2 million

---

[2] Although AEGIS and TIG contend, and Duke disputes, that the Ranger policies at issue are fronting policies for AEGIS and thus that AEGIS should be the party-in-interest for those policies, this issue is not currently before the Court for decision. (Mem. Law AEGIS & TIG (Successor to Ranger) Opp'n Duke's Mot. Partial Summ. J. Regarding Scope Coverage 1 n.2 [hereinafter "AEGIS/TIG Opp'n Br."], ECF No. 639; Duke's Reply Supp. Mot. Partial Summ. J. Regarding Scope Coverage 1 n.1 [hereinafter "Duke's Reply Br."], ECF No. 660; Feb. 26, 2020 Hearing Tr. 38:22–39:7, 62:11–63:17, 72:23–73:24, 88:8–25 [hereinafter "Tr."], ECF No. 747.) The Court thus references these policies as the "Ranger Policies" and the insurer under those Policies as "Ranger" without deciding whether AEGIS is the party-in-interest for the Policies.

on the Policy issued to Duke Power. (CP&L Ranger Policy DUKE_CAIR_000004084–85; Duke Power Ranger Policy DUKE_CAIR_000004270, 000004286.)

7. The Policies specifically provide, in relevant part, that Ranger will indemnify Duke (i.e., the "INSURED" under the Policies):

> [F]or any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under CONTRACT . . . for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE caused by an OCCURRENCE.

(CP&L Ranger Policy § I(a); Duke Power Ranger Policy § I(a).)

8. "Property damage" is defined in the Policies as "physical injury to or destruction of tangible property which occurs during the POLICY PERIOD[.]" (CP&L Ranger Policy § III(m); Duke Power Ranger Policy § III(m).)

9. Significantly for Duke's Motion, the Ranger Policies contain "non-cumulation provisions" through their Limit of Liability provision and their "occurrence" definition under the Policies. Duke asserts that non-cumulation provisions such as those here allow insurers to collapse coverage for an occurrence with continuous damage over multiple policy years into a single policy year, effectively allowing insurers to pay out their policy limit only once, rather than permitting policyholders to stack multiple policy limits for the same occurrence. (Duke's Mem. Law Supp. Mot. Partial Summ. J. Regarding Scope Coverage 2–5, 9 [hereinafter "Duke's Supp. Br."], ECF No. 457.)

10. The Limit of Liability provision in each Policy provides, in relevant part:

With respect to any OCCURRENCE covered under Insuring Agreement I (a), in order to avoid the duplication of the Company's Limit of Liability applying to any one OCCURRENCE, the INSURED agrees that:

(1) in the event the COMPANY provides indemnity or defense costs, charges and expenses for an OCCURRENCE covered during a PREMIUM PERIOD of this POLICY, the INSURED acknowledges it has no right to additional indemnity or defense costs, charges and expenses for such OCCURRENCE under any other PREMIUM PERIOD of this POLICY or any other POLICY issued by the COMPANY to the NAMED INSURED, and the Limit of Liability shall apply only once to such OCCURRENCE regardless of the number of other PREMIUM PERIODS or POLICIES which otherwise could apply to such OCCURRENCE.

(2) in the event the COMPANY shall provide indemnity or defense costs, charges and expenses for an OCCURRENCE covered during a PREMIUM PERIOD of any other POLICY issued by this COMPANY to the NAMED INSURED, the INSURED acknowledges it has no right to additional indemnity or defense costs, charges and expenses for such OCCURRENCE under this POLICY.

(CP&L Ranger Policy § II(b); Duke Power Ranger Policy § II(b).) The Limit of Liability provision thus provides that, in the event of an "occurrence" covered by the Policy, Ranger's limit of liability will apply only once to that occurrence, even if more than one premium period or policy might otherwise apply.

11. The Policies define an "occurrence" as follows:

OCCURRENCE: The term "OCCURRENCE" shall mean an accident, event or continuous or repeated exposure to conditions which result in BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE, subject to the following clarifications:

(1)     all injury, damage or loss of use and all claims for injury, damage or loss of use arising out of the same accident, the same event or exposure to substantially the same general conditions shall be considered as arising out of and comprising a single OCCURRENCE;

(2)     each OCCURRENCE shall be deemed to occur during the PREMIUM PERIOD in which BODILY INJURY, PROPERTY DAMAGE or an act causing PERSONAL INJURY takes place and not during any other PREMIUM PERIOD of this POLICY or any other POLICY issued by the COMPANY to the NAMED INSURED;

(3)     if an act, injury or damage takes place during more than one PREMIUM PERIOD of this POLICY or any other POLICY issued by the COMPANY to the NAMED INSURED, the act, injury or damage shall be deemed to have occurred during the earliest of the following PREMIUM PERIODS:

(a)     the PREMIUM PERIOD when a claim is first made against the INSURED; or

(b)     the PREMIUM PERIOD when the INSURED first receives notice that an OCCURRENCE has taken place; or

(c)     the last PREMIUM PERIOD of the last POLICY issued by the COMPANY to the NAMED INSURED[.]

(CP&L Ranger Policy § III(i); Duke Power Ranger Policy § III(i).)

12.     The parties dispute the proper interpretation of the foregoing provisions. Duke argues that the policy language requires application of "all sums" allocation. Under an all sums approach, assuming Duke establishes its right to coverage and satisfies the applicable SIR, the insurer is liable for all sums, up to each Policy's $25 million per-occurrence limit, that Duke is required to pay for coal ash remediation for each proven "occurrence." (Duke's Supp. Br. 1–4, 10–12; Tr. 16:17–17:6.)

13. In contrast, AEGIS/TIG and the Cross-Motion Defendants (collectively, the "Insurers") contend that the policy language compels application of "pro rata" allocation. Under a pro rata approach, Duke's total remediation costs are allocated equally, by policy period, over the entire period of groundwater contamination at each power plant at issue, and each Insurer is then required to pay only the portion of those costs allocated to policy periods in which the Insurer provided coverage to Duke's predecessors that exceed the applicable SIR in that policy period. (AEGIS/TIG Opp'n Br. 18–21; Defs.' Mem. Opp'n Pls.' Mot. Partial Summ. J. Regarding Scope Coverage & Supp. Conditional Cross-Mot. Partial Summ. J. Regarding Allocation 2–3, 13–14 [hereinafter "Cross-Mot. Defs.' Br."], ECF No. 580.)

14. Duke filed its Motion on January 7, 2019. After a lengthy stay to permit the parties to engage in settlement discussions, (*see* ECF Nos. 461, 480, 486), the Cross-Motion Defendants and AEGIS/TIG filed separate briefs in opposition to the Motion on November 26, 2019 and December 18, 2019, respectively, (ECF Nos. 580, 639).

15. The Cross-Motion Defendants filed the Cross-Motion with their opposition brief on November 26, 2019.[3] The Cross-Motion asks the Court to determine, as a matter of law under Rule 56 of the North Carolina Rules of Civil Procedure

---

[3] Defendants AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania), American Home Assurance Company, and Lexington Insurance Company (collectively, the "AIG-Related Defendants") filed a partial joinder in Defendants' Cross-Motion and certain sections of Defendants' brief in opposition to Duke's Motion and in support of the Cross-Motion on November 27, 2019. (ECF No. 598.) The AIG-Related Defendants did not join in Argument Section III of Defendants' supporting brief, (Cross-Mot. Defs.' Br.), seeking to reserve their ability to assert a position as to the proper interpretation of the Ranger Policies at issue on Duke's Motion at a later time if appropriate.

("Rule(s)"), that, in addition to the Ranger Policies, "all policies potentially implicated" likewise contain policy language requiring pro rata allocation. (Cross-Mot. Defs.' Br. 2–3.) As such, the Cross-Motion seeks a determination that sixty-four policies at issue in this litigation[4] require pro rata allocation. (Cross-Mot. Defs.' Br. 6 n.8, 28.)

16. After full briefing by the parties, the Court held a hearing on the Motions on February 26, 2020, at which Duke and the Insurers were represented by counsel. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

17. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019) (quoting N.C. R. Civ. P. 56(c)). "[A] fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). " '[A]n issue is genuine if it is supported by substantial evidence,' which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion[.]" *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d

---

[4] The policies the Cross-Motion places at issue are identified at Appendix A attached to this Order and Opinion. (*See* Index Exs. Defs.' Conditional Cross-Mot. Summ. J. Regarding Allocation, ECF No. 579.)

118, 124 (2002) (quoting *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)).

18. Under Rule 56, "[e]vidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Pennington*, 356 N.C. at 579, 573 S.E.2d at 124. If the moving party meets its burden, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000); *see also* N.C. R. Civ. P. 56(e).

## III.

## ANALYSIS

### A. Duke's Motion Is Not Premature.

19. The Court first addresses Insurers' contention that Duke's Motion is premature and that a ruling on allocation before the Court has determined whether each policy at issue has been triggered would constitute an improper advisory opinion. (AEGIS/TIG Opp'n Br. 9–10.)

20. Under Rule 56, a party may "move . . . for a summary judgment in his favor upon all or any part thereof." N.C. R. Civ. P. 56(a), (b); *see also Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 NCBC LEXIS 46, at *79 (N.C. Super. Ct.

Aug. 8, 2019) (noting "the common practice by which courts of this State grant partial summary judgment to parties on certain issues that may not amount to an independent cause of action or defense but constitute a form of relief or doctrine which expands or further defines the scope of a party's liability under an asserted cause of action").

21.    Here, Duke seeks a determination of the method by which damages shall be allocated should Duke establish coverage under the Policies.  Although no North Carolina decision appears to be squarely on point, courts in other jurisdictions have ruled on allocation prior to a determination of liability under the applicable insurance policy.  *See, e.g.*, *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 446 (E.D. Va. 2018) (ruling in favor of all sums allocation under New York law and stating that "[b]ecause the plain language of the [non-cumulation clauses] reveals the parties' intent to use an all sums allocation, Plaintiff need not also demonstrate that there is a specific claim for each policy to receive a ruling that all sums allocation applies to the relevant long-tail claims arising under each policy"); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1231, 1233, 1245 (E.D. Wash. 2010) (deciding scope of potential coverage—all sums allocation—before trigger); *Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd's, London*, 797 N.E.2d 434, 436, 440 (Mass. App. Ct. 2003) (noting with approval that trial court determined before trial that all sums allocation would apply if insurers were held liable); *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 951 P.2d 250, 252 (Wash. 1998) (noting that trial court determined

allocation on summary judgment before trial). The Court finds these decisions persuasive in considering the current Motion.

22. Moreover, outside the insurance context, this Court has previously determined the amount of damages to be recovered, subject to liability being proven at trial, *see Morgan v. Turn-Pro Maint. Servs., LLC*, 2020 NCBC LEXIS 5, at *30 (N.C. Super. Ct. Jan. 15, 2020), as well as the availability of certain categories of damages, prior to a determination of liability, *see Crescent Univ. City Venture*, 2019 NCBC LEXIS 46, at *40–58. A determination of the method of allocation required under the Policies on the current record before liability is established is a similar undertaking.

23. In the circumstances of this case, the Court concludes that addressing Duke's Motion at this time will not result in an advisory opinion and is instead a prudent use of the Court's time and resources. *See, e.g.*, *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 244, 113 S.E.2d 689, 702 (1960) (determining that "[w]hile the cause is here, we have jurisdiction and ought to determine those matters in controversy which of necessity must be ultimately determined in any event, whether the declaration of rights is needful to the trustee presently or not"). The Court finds the Insurers' various arguments to the contrary unpersuasive.

24. The Court thus turns to the merits of Duke's Motion and a consideration of the language of the Policies.

B.    The Policies Require All Sums Allocation.

25.    "An insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990) (citing *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)).  Our Supreme Court has directed that "[w]hen interpreting an insurance policy, courts apply general contract interpretation rules." *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456 (2020).

26.    "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978) (citing *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354–55, 172 S.E. 2d 518, 522–23 (1970)); *see also Cowell v. Gaston Cty.*, 190 N.C. App. 743, 746, 660 S.E.2d 915, 918 (2008) ("[T]he intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts[.]" (quoting *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951))).  When examining a policy to determine the parties' intent at the time of issuance, "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *C. D. Spangler Constr.*, 326 N.C. at 142, 388 S.E.2d at 563 (quoting *Woods*, 295 N.C. at 506, 246 S.E.2d at 777); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (same).  "[A] contract of insurance should be given that construction

which a reasonable person in the position of the insured would have understood it to mean[.]" *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978).

27. "In North Carolina, determining the meaning of language in an insurance policy presents a question of law for the Court." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456. An ambiguity in policy language exists where "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia Bank & Tr.*, 276 N.C. at 354, 172 S.E.2d at 522. Upon the Court's determination of an ambiguity, "any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456; *see also Buzz Off Insect Shield*, 364 N.C. at 9–10, 692 S.E.2d at 612 ("[T]his Court construes liberally insurance policy provisions that extend coverage so as to provide coverage, whenever possible by reasonable construction[.]" (quoting *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986)) (brackets and internal quotation marks omitted)).

28. However, "[i]f a court finds that no ambiguity exists, . . . the court must construe the document according to its terms." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456; *see also Woods*, 295 N.C. at 506, 246 S.E.2d at 777 ("[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous

term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.").

29.     Duke argues that the plain language of the Policies' non-cumulation provisions establishes that the parties agreed to all sums allocation as a matter of law.  The Insurers disagree, contending that with or without consideration of the non-cumulation provisions, the Ranger Policies, as well as the sixty-four policies at issue on the Cross-Motion, must be read to require pro rata, rather than all sums, allocation.

30.     To resolve this dispute, the Court first turns to the Insuring Agreement in the Policies.  As noted above, the Insuring Agreement provides that Ranger is liable "for any and all sums . . . for damages because of PROPERTY DAMAGE caused by an OCCURRENCE[.]"  (CP&L Ranger Policy § I(a); Duke Power Ranger Policy § I(a).)  Thus, for Duke to obtain coverage under the Policies, there must be an "occurrence" that causes "property damage."  As defined in the Policies, property damage must have occurred during the policy period, and an occurrence may involve "continuous or repeated exposure to conditions" which results in property damage.  (CP&L Ranger Policy § III(i); Duke Power Ranger Policy § III(i).)

31.     Duke argues that the Insuring Agreement makes plain that when a qualifying occurrence causes property damage during the policy period, the policy language creates liability for "all sums . . . for damages" resulting therefrom.  Thus, Duke contends that, while coverage under the Policies is triggered by physical injury to tangible property occurring during the policy period, the scope of that

coverage extends to all damages that flow from that injury, whenever those damages are incurred. (Duke's Reply Br. 10–12; Tr. 30:24–31:12, 41:1–22.)

32. Duke's core contention on its present Motion is that the non-cumulation provisions in the Policies are fundamentally incompatible with pro rata allocation and compel application of the all sums approach. In particular, Duke contends that the Limit of Liability provision and the "occurrence" definition in the Policies, which "direct the parties to collapse a multi-year occurrence into a single policy period[,]" recognize that "absent the provisions, a single occurrence could trigger multiple policies" and provide that "a single policy would pay for the entire loss within and outside its policy period, but only up to that policy's limits." (Duke's Reply Br. 14.) Duke argues that because these provisions recognize that the Policies would otherwise apply to damages occurring outside the policy period, any textual basis for pro rata allocation—which attempts to allocate coverage strictly to the policy period in which the triggering injury occurred—is eliminated. (Duke's Reply Br. 17.)

33. In opposition, the Insurers argue that the definition of "property damage" in the Policies requires such damage to occur "during the policy period" to trigger coverage and therefore coverage is only available for damages that are incurred during the policy period. The Insurers assert that this interpretation is consistent with the Policies' non-cumulation provisions. They contend that those provisions simply provide that where multi-period damage is incurred, the "part of the damage that takes place in several years covered by the COMPANY's policies is 'deemed' to

take place within a single policy period[,]" and in no way extends coverage, as Duke contends, "to damage that takes place outside of the years covered by the COMPANY's policies." (AEGIS/TIG Opp'n Br. 20.) The Insurers argue this interpretation is necessarily compelled so that the "insurer does not have to pay out multiples of the coverage limit it contracted for" when it is faced with damage that "occurs in other years covered by 'the Company's' policies[.]" (Cross-Mot. Defs.' Br. 25.)

34. After careful review, the Court concludes that the plain language of the non-cumulation provisions in the Policies compels all sums rather than pro rata allocation here as a matter of law.

35. The Limit of Liability provision restricts coverage for an occurrence resulting in damages beyond the policy period to one policy and one limit of liability (here, $25 million per occurrence): "the Limit of Liability shall apply only once to such OCCURRENCE regardless of the number of other PREMIUM PERIODS or POLICIES which otherwise could apply to such OCCURRENCE." (CP&L Ranger Policy § II(b); Duke Power Ranger Policy § II(b).) As both parties acknowledge, this language prevents the insurer from paying its limit of liability more than once for a single occurrence, even if more than one premium period or policy might otherwise apply. The "occurrence" definition is to similar effect and provides that damage from an occurrence resulting in damage in more than one premium or policy period shall be "deemed to have occurred" in one premium period.[5] (CP&L Ranger Policy

---

[5] The parties do not dispute that, if triggered and if liability is established, section III(i)(3)(c) applies here to collapse coverage into "the last PREMIUM PERIOD of the last

§ III(i)(3); Duke Power Ranger Policy § III(i)(3).) The "occurrence" definition thus provides that coverage shall be afforded in such circumstances through a single policy with a single limit of liability, as specifically determined by other provisions in the definition.

36. Both provisions, therefore, recognize that damage may extend beyond the policy period in which the triggering property damage first occurs and reflect the parties' agreement that such damage shall be treated as if all damage occurred in a single premium period, subject to a single policy limit. This treatment is precisely contrary to the pro rata allocation that the Insurers urge, which spreads the insured's damages over many policy periods rather than collapse those damages, and coverage, into a single premium period with a single policy limit as the Policies contemplate.

37. The Court thus concludes that the non-cumulation provisions make plain that the parties' Insuring Agreement in the Policies—that the insurer shall indemnify Duke for "any and all sums which the INSURED shall become legally obligated to pay . . . for damages because of . . . PROPERTY DAMAGE caused by an OCCURRENCE"—obligates the insurer to pay all sums which Duke becomes legally obligated to pay because of "property damage" caused by a covered occurrence, not simply a pro rata portion thereof.

---

POLICY issued by the COMPANY to the NAMED INSURED[.]" (AEGIS/TIG Opp'n Br. 12; Tr. 38:11–21; CP&L Ranger Policy § III(i)(3)(c); Duke Power Ranger Policy § III(i)(3)(c).) The parties dispute, however, which policy and premium period are implicated by this policy language if it were to apply.

38. The Court finds support for its conclusion from courts in other jurisdictions. Although neither the parties nor the Court has discovered a North Carolina case in which the court considered the impact of non-cumulation provisions in determining the scope of coverage for a continuous property damage or bodily injury insurance claim, a large majority of the courts in other jurisdictions that have considered this issue have recognized that non-cumulation provisions such as those here compel all sums rather than pro rata allocation. *See, e.g.*, *Hopeman Bros.*, 307 F. Supp. 3d at 444–46; *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 491 (Del. 2001); *Chicago Bridge & Iron*, 797 N.E.2d at 440–44; *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1152–53 (N.Y. 2016);[6] *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 759 N.W.2d 613, 626–27 (Wis. 2009).

39. The few courts that have determined otherwise—*see, e.g.*, *Spaulding Composites Co. v. Aetna Cas. & Sur. Co.*, 819 A.2d 410, 422–23 (N.J. 2003)—have done so on public policy grounds, not through the application of the rules of contract interpretation that bind the Court here, *see, e.g.*, *Woods*, 295 N.C. at 506, 246 S.E.2d

---

[6] *In re Viking Pump* offers a compelling explanation for why non-cumulation provisions compel all sums allocation and cannot be reconciled with pro rata allocation:

> [T]he very essence of pro rata allocation is that the insurance policy language limits indemnification to losses and occurrences during the policy period— meaning that no two insurance policies, unless containing overlapping or concurrent policy periods, would indemnify the same loss or occurrence. Pro rata allocation is a legal fiction designed to treat continuous and indivisible injuries as distinct in each policy period as a result of the "during the policy period" limitation, despite the fact that the injuries may not actually be capable of being confined to specific time periods. The non-cumulation clause negates that premise by presupposing that two policies may be called upon to indemnify the insured for the same loss or occurrence.

52 N.E.3d at 1153–54.

at 777 ("The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . . [Courts] may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."); *see also, e.g.*, *Plastics Eng'g*, 759 N.W.2d at 627 (finding that applying pro rata allocation would rewrite policy where "no pro rata language or clause exists in the contract, and in fact, the phrase 'all sums' is in the body of the policy").

40. Moreover, three of the four cases upon which the Insurers principally rely—*Crossmann Communities of N.C., Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589 (S.C. 2011); *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E.2d 290 (Mass. 2009); and *Consolidated Edison Co. of N.Y. v. Allstate Insurance Co.*, 774 N.E.2d 687 (N.Y. 2002)—did not involve policies containing non-cumulation provisions, and the one that did—*Danaher Corp. v. Travelers Indemnity Co.*, 414 F. Supp. 3d 436 (S.D.N.Y. 2019)—recognized that pro rata allocation was appropriate under New York law "at least where the policy does not contain a non-cumulation clause or other similar language evidencing the understanding that two or more insurance policies that do not overlap in time might indemnify the insured with respect to the same loss or occurrence[,]" *id.* at 451, which is hardly persuasive support for the Insurers' position.[7] Similarly, none of the cases the Insurers offer as suggestions of subsequently decided authority considered a policy with a non-

---

[7] Indeed, in *Danaher*, the court applied pro rata allocation because, unlike here, the non-cumulation provision at issue did not contain language "that multiple *successive* insurance policies c[ould] indemnify the insured for the same loss or occurrence." 414 F. Supp. 3d at 460 (quoting *In re Viking Pump*, 52 N.E.3d at 1153).

cumulation provision, rendering those cases of little value in the present analysis. *See Montrose Chem. Corp. v. Superior Court of Los Angeles Cty.*, 460 P.3d 1201 (Cal. Apr. 6, 2020); *Rosello v. Zurich Am. Ins. Co.*, No. 2019-24, 2020 WL 1650385 (Md. Apr. 3, 2020); *Lubrizol Advanced Materials, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 2018-1815, 2020 Ohio LEXIS 1009 (Ohio Apr. 23, 2020).

41.     As a result, for the reasons set forth above, the Court concludes that Duke's Motion should be granted and that, should all conditions for coverage be established, coverage shall be allocated, and damages assessed, under the Policies on an all sums rather than a pro rata basis.

C.     Resolution of the Cross-Motion Should be Deferred.

42.     Unlike Duke's Motion, which focuses on undisputed policy language and policies containing non-cumulation provisions, the Cross-Motion seeks a judicial determination that pro rata allocation is required as a matter of law under sixty-four policies, the terms of many of which appear to be in dispute and nearly all of which do not contain non-cumulation provisions.[8]

43.     As to the policies' terms, the current record is insufficient to permit the Court to determine whether relevant, specific policy language in these policies is undisputed, precluding summary judgment at this time. *See Hyde Ins. Agency*, 26

---

[8] The parties appear to agree that there may be a very small number of policies at issue on the Cross-Motion that contain non-cumulation provisions. (*See* Tr. 159:22–160:3 (Duke's Plumer: "[T]here are no non-cum[ulation] clauses, with one or two exceptions that we're not talking about today."), 183:9–21 (Century, Federal, and PEIC's Hacker: "The vast majority of policies, Your Honor, don't have anything like the noncumulation provision. The London E[b]asco policies Mr. Plumer points to is a tiny handful, a thimble full. I think you can count on one hand the number of policies with that language.").)

N.C. App. at 142, 215 S.E.2d at 165 ("If findings of fact are necessary to resolve an issue as to a material fact, summary judgment is improper.").

44. In addition, the parties have argued, (Tr. 153:12–18, 186:23–187:2), and the Court agrees, that the resolution of the current appeal before the North Carolina Court of Appeals in *Radiator Specialty Co. v. Arrowood Indemnity Co.*, No. 19-507 (N.C. Ct. App.), may have an important bearing on the Court's decision on the Cross-Motion. That appeal involves appellate review of a trial court order, *Radiator Specialty Co. v. Fireman's Fund Insurance Co.*, No. 13 CVS 2271, Order Regarding Allocation (N.C. Super. Ct. Jan. 28, 2016),[9] concluding that the insurance policy at issue, which did not contain non-cumulation provisions, required pro rata rather than all sums allocation. The appeal was heard in the Court of Appeals on November 12, 2019 and is pending decision.

45. Based on these considerations, the Court concludes that deferral of its decision on the Cross-Motion is appropriate until the Cross-Defendants offer undisputed policy language to the Court for review and the Court of Appeals has issued its decision in *Radiator Specialty*.

IV.

CONCLUSION

46. **WHEREFORE**, the Court, for the reasons stated above, and in the exercise of its discretion, hereby **GRANTS** Duke's Motion and **DEFERS** ruling on Defendants' Cross-Motion as set forth above.

---

[9] The order is part of the trial record as Ex. F Radiator Specialty Jan. 26, 2016 Order, ECF No. 457.7.

**SO ORDERED**, this the 5th day of June, 2020.


                                       <u>/s/ Louis A. Bledsoe, III</u>
                                         Louis A. Bledsoe, III
                                         Chief Business Court Judge

# APPENDIX A[10]

## Policies at Issue on the Motion

1. AEGIS Policy No. 172 issued to Duke Power for the period December 31, 1979 to December 31, 1980.

2. AEGIS Policy No. 209 CNJ issued to Duke Power for the period October 31, 1985 to October 31, 1986.

3. AEGIS Policy No. 211 CNJ issued to CP&L for the period October 31, 1985 to October 31, 1986.

4. Allianz Underwriters Policy No. AUX 5 20 05 14 issued to Duke Power for the period October 31, 1981 to October 31, 1982.

5. Allianz Insurance Company Policy No. XL 55 95 37 issued to Duke Power for the period October 31, 1982 to October 31, 1983.

6. American Centennial Insurance Company Policy No. CC-00-26-11 issued to Duke Power for the period of October 31, 1982 to October 31, 1983.

7. American Centennial Insurance Company Policy No. CC-00-26-13 issued to CP&L for the period of October 31, 1981 to October 31, 1983.

8. American Home Assurance Company Policy No. CE 338 20 11 issued to Ebasco Services Inc. for the period of February 11, 1974 to December 31, 1975.

9. Arrowood Indemnity Company (f/k/a Royal Indemnity Company) Policy No. EC 103320 issued to Duke Power for the period of October 31, 1984 to October 31, 1985.

10. Birmingham Fire (n/k/a AIG Property Casualty Company) Policy No. SE 6073333 issued to Ebasco Services Inc. for the period of December 31, 1977 to December 31, 1978.

11. California Union Insurance Company Policy No. ZCX 00 38 58 issued to Duke Power for the period of December 31, 1979 to December 31, 1980.

---

[10] The following policies are in the record at Aff. Shane R. Heskin Supp. Defs.' Opp'n Pls.' Mot. Partial Summ. J. Regarding Scope Coverage & Conditional Cross-Mot. Partial Summ. J. Regarding Allocation Exs. 4–67. (ECF Nos. 578.1–.7.)

12. California Union Insurance Company Policy No. ZCX 00 60 09 issued to Duke Power for the period of October 31, 1981 to October 31, 1982.

13. California Union Insurance Company Policy No. ZCX 00 74 50 issued to Duke Power for the period of October 31, 1984 to October 31, 1985.

14. Federal Insurance Company Policy No. (85) 7929-31-63 issued to CP&L for the period of October 31, 1984 to October 31, 1985.

15. Federal Insurance Company Policy No. (85) 7929-31-72 issued to Duke Power for the period of October 31, 1984 to October 31, 1985.

16. Fireman's Fund Insurance Company Policy No. XLX-153 09 17 issued to CP&L for the period of October 31, 1983 to October 31, 1984.

17. Fireman's Fund Insurance Company Policy No. XLX-153 10 24 issued to Duke Power for the period of October 31, 1983 to October 31, 1984.

18. Fireman's Fund Insurance Company Policy No. XLX-168 70 03 issued to Duke Power for the period of November 9, 1984 to October 31, 1985.

19. Fireman's Fund Insurance Company Policy No. XLX-168 70 08 issued to Duke Power for the period of October 31, 1983 to October 31, 1984.

20. First State Insurance Company Policy No. 910816 issued to Duke Power for the period of October 23, 1973 to January 31, 1976.

21. First State Insurance Company Policy No. 926308 issued to Duke Power for the period of February 1, 1978 to December 31, 1978.

22. First State Insurance Company Policy No. 916083 issued to Duke Power for the period of December 31, 1979 to December 31, 1980.

23. First State Insurance Company Policy No. 929871 issued to Duke Power for the period of October 31, 1981 to October 31, 1982.

24. First State Insurance Company Policy No. 917316 issued to Duke Power for the period of October 31, 1982 to October 31, 1983.

25. Lexington Policy No. GC 403189 issued to Ebasco Services Inc. for the period of December 31, 1971 to December 31, 1972.

26. Lexington Policy No. GC 402562 issued to Ebasco Services Inc. for the period of December 31, 1972 to December 31, 1975.

27.    London Policy No. K24880 issued to Ebasco Services Inc. for the period of December 31, 1971 to December 31, 1972.

28.    London Memorandum LIA 1011 issued to CP&L.

29.    London Policy No. K25800 issued to CP&L and Duke Power for the period of December 31, 1972 to December 31, 1973.

30.    London Policy No. K25801 issued to CP&L and Duke Power for the period of December 31, 1972 to December 31, 1973.

31.    London Policy No. K25802 issued to Duke Power for the period of October 23, 1973 to December 31, 1975.

32.    London Memorandum LIA 1306 issued to Duke Power.

33.    London Memorandum LIA 1307 issued to Duke Power.

34.    London Memorandum LIA 1308 issued to Duke Power.

35.    London Memorandum LIA 1309 issued to Duke Power.

36.    London Memorandum LIA 1152 issued to CP&L.

37.    London Memorandum LIA 1153 issued to CP&L.

38.    London Memorandum LIA 1301 issued to CP&L.

39.    Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Policy No. UGL 1331 issued to CP&L and Duke Power for the period of December 31, 1975 to December 31, 1978.

40.    Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Policy No. UGL 1332 issued to CP&L and Duke Power for the period of December 31, 1975 to December 31, 1978.

41.    Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Policy No. UGL 1333 issued to CP&L and Duke Power for the period of December 31, 1975 to December 31, 1978.

42.    Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Policy No. UGL 1334 issued to Duke Power for the period of December 31, 1975 to December 31, 1978.

43. Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Policy No. UJL 1680 issued to CP&L and Duke Power for the period of December 31, 1975 to December 31, 1978.

44. Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Memorandum No. LIA 1358 issued to Duke Power.

45. Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Memorandum No. LIA 1359 issued to Duke Power.

46. Certain Underwriters at Lloyd's, London, England and Certain Insurance Companies, London, England Memorandum No. LIA 1352 issued to Duke Power.

47. London Guarantee and Accident Company Policy No. LX3278836 issued to Duke Power for the period of October 31, 1981 to October 31, 1982.

48. London Guarantee and Accident Company Policy No. LX1898119 issued to Duke Power for the period of October 31, 1982 to October 31, 1983.

49. Northbrook Policy No. 63 000 264 issued to Duke Power for the period of October 23, 1973 to December 31, 1975.

50. North Star Reinsurance Policy No. NSX-11822 issued to Duke Power for the period of October 23, 1973 to December 31, 1976.

51. Old Republic Policy No. OZX-11486 issued to Duke Power for the period of October 31, 1981 to October 31, 1982.

52. Pacific Employers Insurance Company Policy No. XCC 00 23 80 issued to CP&L for the period of October 31, 1982 to October 31, 1983.

53. Pacific Employers Insurance Company Policy No. XCC 00 23 83 issued to Duke Power for the period of October 31, 1982 to October 31, 1983.

54. Pacific Employers Insurance Company Policy No. XCC 01 24 37 issued to CP&L for the period of October 31, 1983 to October 31, 1984.

55. Pacific Employers Insurance Company Policy No. XCC 00 23 80 issued to Duke Power for the period of October 31, 1983 to October 31, 1983.

56. Pacific Employers Insurance Company Policy No. XMO 02 22 24 issued to CP&L for the period of October 31, 1983 to October 31, 1984.

57. Ranger Insurance Company Policy No. BSP 122047 issued to Duke Power for the period of October 31, 1981 to October 31, 1983.

58. Ranger Insurance Company Policy No. BSP 122048 issued to CP&L for the period of October 31, 1981 to October 31, 1983.

59. Ranger Insurance Company Policy No. EUL300658 issued to Duke Power for the period of October 31, 1983 to October 31, 1984.

60. Ranger Insurance Company Policy No. EUL300659 issued to CP&L for the period of October 31, 1983 to October 31, 1984.

61. Ranger Insurance Company Policy No. EUL300578 issued to CP&L for the period of October 31, 1984 to October 31, 1985.

62. Ranger Insurance Company Policy No. EUL300579 issued to Duke Power for the period of October 31, 1984 to October 31, 1985.

63. Twin City Fire Policy No. TXS101193 issued to Duke Power for the period of October 31, 1982 to October 31, 1983. 69.

64. U.S. Fire Insurance Company Policy No. 522 020271 6 issued to CP&L for the period of October 31, 1984 to October 31, 1985.