STATE OF NORTH CAROLINA v. JIMMY ROGER TENNANT

No. COA99-1324

(Filed 29 December 2000)

**Probation and Parole— indecent liberties—knowing and willful violation of probation condition—activation of sentence**

The trial court did not err in an indecent liberties case by revoking defendant's probation and activating his sentence based on his knowing and willful violation of the condition of probation that he have no contact with the victim, even though defendant contends he did not have contact with the victim when he went to the victim's mother's residence where the victim lived, because: (1) the evidence was uncontested that defendant had

been told by a probation officer on numerous occasions that he could not have contact with the victim, and that the probation officer repeatedly explained to defendant what was meant by contact; (2) defendant willfully telephoned the victim's mother at her home, drove there, and went inside without a lawful excuse for his action; and (3) defendant's suggestion that he must have touched or visually observed the victim in order to have had contact with her is unpersuasive in light of the fact that defendant was repeatedly instructed to stay away from the victim's home and place of employment, and to cease all communication with her.

Appeal by defendant from judgment entered 23 June 1999 by Judge L. Oliver Noble, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 October 2000.

*Michael F. Easley, Attorney General, by Claud R. Whitener, III, Assistant Attorney General, for the State.*

*Isabel Scott Day, Public Defender, by Julie Ramseur Lewis, Assistant Public Defender, for defendant-appellant.*

EDMUNDS, Judge.

Defendant appeals from a judgment revoking his probation and activating his sentence. We affirm.

Defendant was arrested on 2 October 1996 and charged with taking indecent liberties with a minor in violation of N.C. Gen. Stat. § 14-202.1 (1999). Defendant pled guilty to the charge on 18 March 1997 and was sentenced to a term of imprisonment of sixteen to twenty months. The sentence was suspended, and defendant was placed on supervised probation for a period of thirty-six months. Among the conditions of probation was a requirement that he have no contact with the victim (hereinafter referred to as "X").

On 26 May 1999, defendant's probation officer, James Donoghue (Donoghue), was contacted by X's mother, who informed Donoghue that defendant had recently telephoned her and was on his way to her house. In response, Donoghue drove past the mother's home, where he observed defendant inside the house speaking with the mother. When Donoghue turned his car around, he saw defendant walking out of the mother's residence and placed him under arrest. Donoghue then went inside the house where he saw X.

Donoghue's probation violation report charged defendant with violating the condition of his probation, which mandated that he "[h]ave no contact with [X]." At the probation violation hearing, Donoghue testified for the State that he had instructed defendant on many occasions not to go to the house where X was living and not to have any contact by telephone or letter with X. On cross-examination, Donoghue testified that although he did not know if defendant had actually communicated with X on 26 May 1999, he determined that X had been inside her mother's residence when defendant was present. Defendant stipulated to Donoghue's recitation of the facts and did not present any evidence. After considering the evidence and arguments of the parties, the court found that defendant wilfully and without lawful excuse violated a condition of his probation and that the violation was a sufficient basis to revoke his probation. Accordingly, the court activated defendant's sentence. Defendant appeals.

Our Supreme Court has held that "[a] person convicted of [a] crime is not given a right to probation by the United States Constitution." *State v. Hewett*, 270 N.C. 348, 351, 154 S.E.2d 476, 478 (1967) (citations omitted). Rather, "[p]robation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime." *State v. Duncan*, 270 N.C. 241, 245, 154 S.E.2d 53, 57 (1967) (citing *Escoe v. Zerbst*, 295 U.S. 490, 79 L. Ed. 1566 (1935)). An individual on probation is said to "carr[y] the keys to his freedom in his willingness to comply with the court's sentence." *State v. Robinson*, 248 N.C. 282, 285, 103 S.E.2d 376, 379 (1958).

A proceeding "to revoke probation [is] often regarded as informal or summary," *Duncan*, 270 N.C. at 246, 154 S.E.2d at 57 (citing 21 Am. Jur. 2d, *Criminal Law* § 568), and the court is not bound by strict rules of evidence, *see id.* at 245, 154 S.E.2d at 57. An alleged violation by a defendant of a condition upon which his sentence is suspended "need not be proven beyond a reasonable doubt. All that is required is that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has violated a valid condition upon which the sentence was suspended." *Robinson*, 248 N.C. at 285-86, 103 S.E.2d at 379 (internal citations omitted). "The findings of the judge, if supported by competent evidence, and his judgment based thereon are not reviewable on appeal, unless there is a manifest abuse of discretion." *State v. Guffey*, 253 N.C. 43, 45, 116 S.E.2d 148, 150 (1960) (citations omitted).

STATE v. TENNANT

[141 N.C. App. 524 (2000)]

" '[O]ur Courts have continuously held that a suspended sentence may not be activated for failure to comply with a term of probation unless the defendant's failure to comply is willful or without lawful excuse.' " *State v. White,* 129 N.C. App. 52, 57, 496 S.E.2d 842, 846 (1998) (quoting *State v. Sellers,* 61 N.C. App. 558, 560, 301 S.E.2d 105, 106 (1983)), *aff'd in part,* 350 N.C. 302, 512 S.E.2d 424 (1999). "[T]he burden of proof is upon the State to show that the defendant has violated one of the conditions of his probation." *State v. Seagraves,* 266 N.C. 112, 113, 145 S.E.2d 327, 329 (1965).

Defendant's assignments of error relate to the sufficiency of evidence presented at the probation violation hearing. Focusing on the word "contact," defendant argues that he did not "contact" X, because there was no evidence that he touched or spoke with her or that she even saw or heard him while he was inside X's mother's residence. However, the evidence was uncontested that defendant had been told by probation officer Donoghue on numerous occasions that he could not "contact" X. Donoghue testified at the 23 June 1999 hearing that he had repeatedly explained to defendant what was meant by "contact." Specifically, Donoghue stated:

Q: And had you spoke with Mr. Tennant about the fact that he was not to have any contact with [X]?

A: Numerous times. When I spoke to him I explained to him, I even asked, he had asked me about going over to that house and we told him he couldn't go to that house because the victim was there. He couldn't have any contact by phone, letter, couldn't go to her place of employment. Any of these places constitute having contact.

Therefore, defendant was on notice of the meaning of "contact" in the context of his probation. In addition, he was instructed with precision as to conduct that would constitute a violation of probation. Nevertheless, evidence was presented that defendant wilfully telephoned X's mother at her home, then drove there and went inside. Defendant presented no evidence of a lawful excuse for his action. This evidence is sufficient to support a finding that defendant wilfully and knowingly violated a condition of his probation. *See, e.g., Hewett,* 270 N.C. 348, 154 S.E.2d 476 (holding revocation of defendant's probation was proper because there was enough competent evidence in the record to support that defendant had wilfully failed to avoid injurious or vicious habits); *Duncan,* 270 N.C. 241, 154 S.E.2d

53 (finding competent evidence to support revocation of defendant's probation where defendant failed to satisfy the conditions that he work faithfully at suitable, gainful employment, that he remain in a specified area, and that he report to his probation officer at specified times); *State v. Morton*, 252 N.C. 482, 114 S.E.2d 115 (1960) (stating there was competent evidence to support revocation of defendant's probation where defendant failed to make weekly support payments for his family); *White*, 129 N.C. App. 52, 496 S.E.2d 842 (upholding revocation of probation where defendant was wilfully in presence of victim by not immediately leaving premises of individual who called victim over to his property); *State v. Tozzi*, 84 N.C. App. 517, 353 S.E.2d 250 (1987) (affirming revocation of probation where defendant left his authorized residence without permission from his probation officer and missed several probation meetings); *State v. Darrow*, 83 N.C. App. 647, 351 S.E.2d 138 (1986) (holding revocation of probation was proper where defendant violated condition of his probation by contacting victim); *State v. Monroe*, 83 N.C. App. 143, 349 S.E.2d 315 (1986) (finding revocation of probation valid where evidence established that defendant breached a condition of his probation by knowingly writing bad checks); *Crouch*, 74 N.C. App. 565, 328 S.E.2d 833 (affirming revocation of probation where defendant failed to make payments to the clerk of court as required as a condition of his probation); *State v. Coffey*, 74 N.C. App. 137, 327 S.E.2d 606 (1985) (finding that the evidence supported the court's finding that defendant failed to report to her probation officer as required, which was sufficient to support the court's order revoking her probation); *State v. Williamson*, 61 N.C. App. 531, 301 S.E.2d 423 (1983) (affirming revocation of probation where defendant was in arrears in his restitution payments, which he had been ordered to pay as a condition of probationary judgment); *State v. Camp*, 59 N.C. App. 38, 295 S.E.2d 766 (1982) (holding revocation of probation was valid where defendant violated a condition of his suspended sentence by communicating with the Polk County Sheriff's Department by telephone without justifiable reason); *State v. Lucas*, 58 N.C. App. 141, 292 S.E.2d 747 (1982) (finding revocation of probation was proper where evidence supported the judge's finding that defendant wilfully and without lawful excuse violated a condition of his probation by refusing to attend and complete the Hegira House program); *State v. Blevins*, 54 N.C. App. 147, 282 S.E.2d 524 (1981) (holding no abuse of discretion in trial court's finding that defendant wilfully violated the conditions of his suspended sentence by failing to pay restitution to victim of his crime of false pretenses).

Defendant's suggestion that he must have touched or visually observed X in order to have had contact with her is unpersuasive. Although defendant makes the hypothetical argument that he could shop at a grocery store where X is employed without violating his probation as long as X is working in a back room where defendant cannot communicate with her, we decline the invitation to adopt a restrictive interpretation of "contact" that would require physical touching or verbal communication. Defendant's construction would allow a sex offender to visit the home of his victim every day as long as the victim was some place in the home where the perpetrator could not visually observe the victim, or go to the victim's school or workplace if he stood in the parking lot or at a distance away from the victim. Defendant's interpretation is not plausible, particularly in view of the evidence here that defendant was repeatedly instructed to stay away from the victim's home and place of employment and to cease all communication with her.

Accordingly, we hold that the trial court did not abuse its discretion in finding that defendant's actions constituted a knowing and wilful violation of his probation. The action of the trial court is affirmed.

Affirmed.

Judges GREENE and MARTIN concur.