THORNBURG, Judge.
Defendant Calvin Lee Morgan pled guilty to possession of a stolen motor vehicle, whereupon the trial court sentenced defendant to 10-12 months imprisonment. The trial court suspended defendant's active sentence and placed him on supervised probation for 36 months. On or about 13 June 2003, defendant's probation officer filed a violation report, alleging that defendant had violated the terms and conditions of his probation, as follows:
1. . . . Offender was tested on 6-2-03 and test came back adulterated and offender was retested on 6-5-03 and that test was positive for marijuana[.]
2. . . . Offender was instructed to pay $35 per month beginning 3-1-03 and as of the dateof this report offender has not made a payment putting him in arrears of $140.00[.]
3. . . . Offender was instructed to pay $30 per month beginning on 3-1-03 and has not made a payment putting him in arrears of $120.00[.]
4. . . . While conducting a search of offenders [sic] residence on 6-12-03 officers found a bag containing crack cocaine and a bag containing marijuana.
5. . . . Offender quit his job at Checkers on Marine Blvd on 6-5-03[.]
A hearing on defendant's alleged probation violations was held at the 28 July 2003 criminal session of Onslow County Superior Court. From the transcript of the proceedings, it appears that upon defendant's motion, appointed counsel had been discharged on or about 24 July 2003. A waiver of counsel form was not, however, executed at that time. After being briefly questioned by the trial court about his decision to discharge counsel and represent himself on 28 July 2003, defendant executed a waiver of counsel form, waiving his right to all assistance of counsel. Defendant then went on to admit that he had violated the terms and conditions of his probation as alleged in the 13 June 2003 probation violation report.
The trial court asked defendant's probation officer, Becky Kellum, to "[t]ell me about him[.]" Kellum testified that she spoke to defendant at length just a day before he quit his job. During this conversation, Kellum noted that she reiterated how important it was to keep his job. On the next day, Kellum received a call from defendant's employer stating that he had not shown up for work. Further, Kellum explained that defendant had "not paid hismoney. He's not done anything. He tested positive. We found drugs in his house. And he's staying in a place he knows he's banded [sic] from." Finally, Kellum said, "I can't do anything with him, Judge."
The court then asked defendant if he had anything to say. The court explained to him, "You are not required to but if you wish to I'm happy to hear you." Defendant went on to tell the court that he was not expecting to be on house arrest and had trouble finding a job while being on house arrest. Defendant further told the court that he could not find a job initially because he did not have two forms of identification. After finding his identification in his sister's dresser drawer, however, defendant noted that he did try to find employment. Defendant told the court that he did not have transportation, money, nor a job; and that he had been locked up in Burgaw, North Carolina for a month. When asked by the court if house arrest had interfered with his ability to comply with the terms and conditions of probation, defendant said: "I wasn't expecting to be on house arrest . . . . And plus I haven't even been charged with selling no drugs out of the house. I just been accused." When asked by the court if there was anything further, defendant stated, "I just came home from prison, Your honor. This is not helping me none. It just keeps sending me back to prison and I'm back and forth[.]"
Based upon this evidence, the trial court found that defendant waived a violation hearing in that he "came into court and freely and voluntarily admit[t]ed violations," as alleged in the violationreport. The court found these admissions to be a substantial reason to revoke his probation and, in its discretion, did so and activated defendant's suspended sentence. Defendant appeals.
While defendant presents three assignments of error and corresponding arguments on appeal, the sole issue before this Court is whether there was sufficient evidence before the trial court to satisfy the court that defendant violated a valid condition of probation, and that the violation was willful and without lawful excuse. Probation is an act of grace, and therefore, a proceeding to revoke probation is often regarded as informal and the trial court is not bound by strict rules of evidence. State v. Tennant, 141 N.C. App. 524, 526, 540 S.E.2d 807, 808 (2000). All that is required is that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended. State v. Dixon, 139 N.C. App. 332, 341, 533 S.E.2d 297, 304 (2000).
While the minimum requirements of due process requires the State to present evidence to show the willful violation of probation, such a requirement may be waived by a defendant's "in-court admission of the willful or without lawful excuse violation as contained in the written notice (or report) of violation." State v. Williamson, 61 N.C. App. 531, 533, 301 S.E.2d 423, 425 (1983). It is well-settled that "[a]ny violation of a valid condition ofprobation is sufficient to revoke [a] defendant's probation." State v. Tozzi, 84 N.C. App. 517, 521, 353 S.E.2d 250, 253 (1987).
In the case sub judice, the trial court had before it a verified probation violation report, which was read by the prosecutor during the hearing. Defendant subsequently admitted to violating the terms and conditions of his probation, and though the trial court was not required to do so, the court allowed defendant to explain his reasons for violating his probation. Even assuming that defendant's discourse addressed his reasons for not maintaining employment and failing to meet his monetary obligations of probation, defendant wholly failed to offer any excuse (lawful or otherwise) for testing positive for drug use and for the discovery of cocaine in his residence. Accordingly, the trial court had before it plenary evidence from which it could find that defendant violated at least one valid term and condition of his probation. In accordance with Tozzi, this one violation is sufficient to support the trial court's decision to revoke defendant's probation. We reject defendant's contention that the trial court was required to consider other options, such as modification or continuation, before revoking defendant's probation. See State v. Jones, 78 N.C. App. 507, 510, 337 S.E.2d 195, 197-98 (1985)(providing that due process does not generally require the trial court to indicate that it has considered alternatives to incarceration prior to revoking probation). We conclude that the trial court did not abuse its discretion in revoking defendant's probation and activating his sentence. Finally, we note that defendant's challenge to his waiver of counsel is not properly before the Court, since defendant did not assign error to this matter in the record on appeal. See N.C. R. App. P. 10(a)("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); State v. Williamson, 333 N.C. 128, 138, 423 S.E.2d 766, 771 (1992)(providing that the appellant on appeal may only argue errors properly set forth in the assignments of error listed in the record on appeal).
In light of the foregoing, the judgment of the trial court is affirmed.
Affirmed.
Judges HUDSON and STEELMAN concur.
Report per Rule 30(e).