IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-233

No. COA19-926

Filed 1 June 2021

Guilford County, No. 16 CVS 9056

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Plaintiff,

v.

LANIER LAW GROUP, P.A., and LISA LANIER, Defendants.

Appeal by defendants from order entered 28 June 2019 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 28 April 2021.

*Goldberg Segalla LLP, by David L. Brown and Martha P. Brown, for plaintiff-appellee.*

*Pinto Coates Kyre & Bowers, PLLC, by Richard L. Pinto and Matthew J. Millisor, for defendants-appellants.*

TYSON, Judge.

¶ 1 Lanier Law Group, P.A. (LLG) and Lisa Lanier ("Lanier") ("collectively Defendants") appeal from an order entered granting summary judgment to North Carolina Farm Bureau Insurance Company, Inc. ("Plaintiff"). We affirm.

## I. Background

¶ 2 LLG is a North Carolina-chartered professional association law firm, which specializes in representing plaintiffs in personal injury actions. Lanier is

President/CEO of LLG and she practices law in North Carolina. Plaintiff is a mutual insurance company organized and existing under the laws of North Carolina.

¶ 3 LLG seeks clients by sending marketing materials to individuals who have been involved in automobile accidents. LLG obtains the names and addresses of the potential clients from the North Carolina Division of Motor Vehicles form DMV-349 accident reports.

¶ 4 LLG purchased three primary business policies and an excess policy from Plaintiff. Lanier individually purchased three homeowners' policies and a personal umbrella policy from Plaintiff.

¶ 5 LLG, Lanier, and other personal injury lawyers, who also utilize the direct mailing solicitations from DMV-349 accident reports, were named in a class action filed on 27 May 2016 in the United States District Court for the Middle District of North Carolina captioned *Garey v. James S. Farrin*, Case No. 1:16-cv-00542-LCB-JLW.

¶ 6 The plaintiffs in *Garey* alleged the defendants, including Defendants herein, obtained and used their "protected personal information" in connection with advertisements for legal services without the consent of the plaintiffs in violation of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA").

¶ 7 Allegations in the *Garey* complaint assert:

140. Defendants *knowingly* obtained and used one or more

Plaintiff's protected personal information from a motor vehicle record as described above.

141. Each Defendant *knowingly* obtained, disclosed and used one or more Plaintiff's protected personal information from a motor vehicle record for the purpose of marketing that Defendant's legal services.

. . . .

143. When each Defendant sent its above-described mailing containing the words "This is an advertisement for legal services" to one or more Plaintiffs, Defendants *knowingly* disclosed and used said Plaintiff's personal information from a motor vehicle record.

144. Defendants *knowingly* obtained, disclosed and used Plaintiffs' personal information from a motor vehicle record for the purpose of marketing legal services.

145. Advertising for legal services for the solicitations of new potential clients is not a permissible purpose for obtaining motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

146. Defendants *knowingly* obtained, disclosed and used Plaintiffs' personal information from a motor vehicle record in violation of the DPPA. (emphasis supplied).

¶ 8    Upon cross motions for summary judgment in the underlying case, the United States District Court Judge denied the plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment. *Garey v. Farrin*, __ F. Supp.3d __, 2021 WL 231281 (M.D.N.C. 2021).

¶ 9　　　　The *Garey* order and opinion states the plaintiffs were involved in vehicle accidents wherein "local police officers or North Carolina State Highway Patrol troopers investigated and recorded their findings on a standard DMV-349 form that was then provided to the North Carolina Division of Motor Vehicles ("DMV")." *Id.* at __, 2021 WL 231281, at *1. The information was gathered from the individual's driver's license. *Id.*

¶ 10　　　　The defendants in *Garey* gathered the information from DMV -349s themselves or they "purchased accident report data aggregated by a third party." *Id.* Nowhere in plaintiff's pleadings or arguments in *Garey* did they allege the DMV-349 reports are "motor vehicle records," but "the information included in the report may be traced back to such records and thus fall under the ambit of the DPPA." *Id.*

¶ 11　　　　"There are no allegations that the accident reports are motor vehicle records under the DPPA nor that the information was obtained from a search of a DMV database." *Id.* at __, 2021 WL 231281, at *8 (internal quotation marks omitted). The plaintiff in *Garey* did not assert and the District Court Judge did not find any case "where a defendant was adjudged liable as a matter of law for a DPPA violation after obtaining, disclosing, or using personal information that was not gathered directly from a state DMV." *Id.* (internal quotation marks omitted).

¶ 12　　　　Lanier and LLG tendered the defense of the *Garey* litigation to Plaintiff under the policies listed above. Plaintiff agreed to defend Defendants under a reservation

of rights to later deny indemnity coverage and to withdraw from providing for the defense. During oral argument, Plaintiff's counsel stated Plaintiff would not be seeking a recoupment of costs and fees extended during Defendant's defense of the *Garey* suit.

¶ 13     Plaintiff commenced this action by filing a declaratory judgment complaint on 2 December 2016 to determine its obligations under the above policies to the *Garey* suit. On cross-motions for summary judgment, the trial court entered a summary judgment order for Plaintiff on 28 June 2019 finding the *Garey* suit did not trigger Plaintiff's duty to defend under any of the tendered policies. Defendants timely appealed.

## II.     Jurisdiction

¶ 14     This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2019).

## III.     Issue

¶ 15     Defendants argue the trial court erred by granting summary judgment for Plaintiff and assert, at minimum, there is a duty to defend under the LLG excess policy.

## IV.     Plaintiff's Summary Judgment Motion

### A. Standard of Review

¶ 16     North Carolina Rule of Civil Procedure 56(c) entitles a movant to obtain summary judgment upon demonstrating "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits" show there is "no genuine issue as to any material fact" and the movant is "entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019).

¶ 17 A genuine issue of material fact is one supported by evidence that would "persuade a reasonable mind to accept a conclusion." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). "An issue is material if the facts alleged would . . . affect the result of the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

¶ 18 "The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). "This burden may be met by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation and internal quotation marks omitted).

¶ 19 "The evidence produced by the parties is viewed in the light most favorable to the non-moving party." *Hardin v. KCS Int'l., Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009) (citation omitted). When the court reviews the evidence at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau*

*v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citation omitted).

¶ 20 "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). The meaning of the terms and provisions used in an insurance policy are a question of law. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

**B. Rules of Construction of Insurance Policies**

¶ 21 Our Supreme Court stated an insurance policy is a contract, "[a]s with all contracts, the object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (citation and internal quotation marks omitted); *see Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978) ("[T]he goal of [insurance policy] construction is to arrive at the intent of the parties when the policy was issued.").

¶ 22 "[T]he most fundamental rule [in interpreting insurance policies] is that the language of the policy controls." *Nationwide Mut. Ins. Co. v. Mabe*, 115 N.C. App. 193, 198, 444 S.E.2d 664, 667 (1994).

¶ 23    Any ambiguities in the insurance policy are "strictly construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 73 (1986).

¶ 24    Our Supreme Court stated our courts are to "construe[] liberally insurance policy revisions that extend coverage so as to provide coverage, whenever possible by reasonable construction," and "strictly construe against an insurance company those provisions excluding coverage under an insurance policy." *Harleysville Mut. Ins. Co.*, 364 N.C. at 9-10, 692 S.E.2d at 612 (citation and internal quotation marks omitted); *see State Capital Ins. Co.*, 318 N.C. at 542-43, 350 S.E.2d at 71 (1986) ("Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured.").

¶ 25    If the insurance policy specifically defines a term, that definition governs its application. *York Indus. Ctr., Inc. v. Mich. Mut. Liab. Co.*, 271 N.C. 158, 162, 155 S.E.2d 501, 505 (1967) ("Since the word . . . is defined in the amended policy, it must be given that meaning, regardless of whether a broader or narrower meaning is customarily given to the term, the parties being free, apart from statutory limitations, to make their contract for themselves and to give words therein the meaning they see fit."). This Court stated, "all parts of an insurance policy are to be construed harmoniously so as to give effect to each of the policy's provisions." *Nationwide Mut. Ins. Co.*, 115 N.C. App. at 198, 444 S.E.2d at 667.

## C. Duty to Defend

A policyholder claiming coverage under an enforceable insurance policy triggers two independent duties the carrier owes to the insured: the duty to defend and the duty to indemnify. *See Harleysville Mut. Ins. Co.*, 364 N.C. at 6-7, 692 S.E.2d at 610-11. Our Court has held: "the insured has the burden of bringing itself within the insuring language of the policy." *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 283, 708 S.E.2d 138, 147 (2011) (citation and alteration omitted).

If the insured party meets this burden, the burden shifts to the insurer to "prove that a policy exclusion excepts the particular injury from coverage." *Id.* (citation omitted). If the insurer meets this burden, the burden shifts back to the insured to "prov[e] that an exception to the exclusion exists and applies to restore coverage." *Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 189, 202, 494 S.E.2d 774, 783 (1998) (citation omitted).

Our Supreme Court examined the interplay between a duty to defend and a duty to indemnify in *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) holding:

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. *When the pleadings state facts demonstrating that the alleged injury*

> *is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.* Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Id.* (emphasis supplied). An insurer is excused from its duty to defend when "the facts are not even arguably covered by the policy." *Id.* at 692, 340 S.E.2d at 378.

¶ 29    Our Supreme Court further explained the duty of an insurer to defend in *Waste Management* holding: "Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage." *Id.* at 691, 340 S.E.2d at 377 (citation omitted).

¶ 30    Later in *Harleysville Mut. Ins. Co.*, our Supreme Court articulated a "comparison test" by reading the policies at issue and the complaint "side by side" to determine whether an insurer has a duty to defend. *Harleysville Mut. Ins. Co.*, 364 N.C. at 6, 692 S.E.2d at 610. A court performs this test by taking "the facts as alleged in the complaint . . . are true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." *Id.* at 7, 692 S.E.2d at 611.

¶ 31    This Court extended the "comparison test" from just allegations in the pleadings and the policy in *Waste Management* and *Harleysville Mut. Ins. Co.* to

include "facts learned from the insured and facts discoverable by reasonable investigation may also be considered." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990).

¶ 32 Defendants tendered claims under four separate types of policies to Plaintiff: business primary policies, business excess policy, personal homeowners' policies, and a personal umbrella policy. The parties agreed at oral arguments that the only policy where coverage is at issue is under the LLG business excess policy. We limit our review to that policy.

### D. Willful Violation of a Criminal Statute

¶ 33 The excess policy contains an exclusion for injuries arising out of the willful violation of a penal statute:

> **2. Exclusions**
>
> This insurance does not apply to:
> a.     "Personal injury" or "advertising injury";
>
>  . . .
>
>         (4) Arising out of the willful violation of a penal
>         statute or ordinance committed by or with the
>         consent of the insured.

¶ 34 Plaintiff asserts that there is no duty to defend because the complaint alleges as the basis of liability, "Defendants knowingly obtained, disclosed and used Plaintiffs' personal information from a motor vehicle record in violation of the DPPA."

Plaintiff contends a knowing violation of the DPPA is a criminal act and, the alleged injury arising out of a willful violation of a penal statute, triggers the policy exclusion. We agree.

Federal code, 18 U.S.C. § 2721, proscribes the knowing disclosure of personal information and highly restricted personal information. 18 U.S.C. § 2725(3) defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

18 U.S.C. § 2725(4) defines "highly restricted personal information" as an individual's photograph or image, social security number, medical or disability information[.]" 18 U.S.C. § 2725(4). 18 U.S.C. § 2723 criminalizes knowing violations. The code also creates a civil cause of action for knowing violations in 18 U.S.C. § 2724. Thus, a knowing violation of the DPPA, which gives rise to a civil cause of action, is also a violation of the penal criminal provision.

The dispositive issue is whether the plaintiff's allegations of "knowingly" violating the DPPA in *Garey* has the same meaning as "willfully" doing so. Neither the insurance policy nor the DPPA define "knowingly" or "willfully."

¶ 38    "Knowingly" is defined as "1. having knowledge or understanding 2. shrewd; clever 3. implying shrewd understanding or possession of a secret or inside information 4. deliberate; intentional." Webster's New World College Dictionary 806 (5th ed. 2014). "Willful" is defined in part as "1. said or done deliberately or intentionally." Webster's New World College Dictionary 1656 (5th ed. 2014).

¶ 39    The terms "knowingly" and "willfully" are both defined as deliberate or deliberately. The standard dictionary and ordinary meanings of both words are equivalent. Our General Assembly, our Supreme Court, and this Court have used both terms in tandem and interchangeably in both the criminal and civil contexts. *See Marshall v. Miller,* 302 N.C. 539, 547, 276 S.E.2d 397, 402 (1981); *State v. Tennant*, 141 N.C. App. 524, 529, 540 S.E.2d 807, 810 (2000).

¶ 40    We conclude that the words "willful" and "knowing" carry essentially the same or equivalent meanings. An allegation of a "knowing" violation of the DPPA is an allegation of a "willful" violation of the DPPA. The injury alleged in the underlying complaint, which is based upon Defendants having "knowingly obtained, disclosed and used Plaintiffs' personal information from a motor vehicle record in violation of the DPPA," is injury arising out of the "willful" violation of a penal statute and that violation is excluded from coverage under the plain terms of the policy.

## V. Conclusion

¶ 41    Viewed in the light most favorable to Defendants and giving them the benefit

of any disputed inferences, the trial court properly entered summary judgment for Plaintiff. Applying the "comparison test" of the *Garey* complaint's allegations to the terms of Defendants' policy with Plaintiff, the policy excludes coverage for the facts as alleged or for "facts discoverable by reasonable investigation." *Harleysville Mut. Ins. Co.*, 364 N.C. at 6, 692 S.E.2d at 610-11 (citation omitted); *Duke Univ.*, 96 N.C. App. at 638, 386 S.E.2d at 764. Defendants' claims for coverage under the LLG excess business policy do not invoke Plaintiff's duty to defend. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges DEITZ and ARROWOOD concur.